**I am before the court without waiving any rights remedies or defenses, statutory or procedural**

UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

**FLINT EDWARDS AND CARLYNE DESIR,**

PLAINTIFF

Case No

VS.

**BMO HARRIS BANK N.A**

DEFENDANT

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, DEMAND FOR DISCOVERY AND JURY TRIAL

**DEMAND FOR JURY TRIAL;** WAIVER, Fla. R.Civ. P. 1.430.
Rule 1.430 - DEMAND FOR JURY TRIAL; WAIVER (a) Right Preserved. The right of trial by jury as declared by the Constitution or by statute shall be preserved to the parties inviolate. Rule 38. Right to a Jury Trial; Demand for trial.

### Fla. R. Civ. P. 1.280 - GENERAL PROVISIONS GOVERNING DISCOVERY.

I respectfully request the indulgence of this court as I am not schooled in law. This is provided by the precedent set by Haines vs. Kerner at 404 U.S. 519. Plaintiff is proceeding without the benefit of legal counsel. Additionally, I am not a practicing attorney, nor has I been trained in the complex study of law. As such, "plaintiff' pro se papers are to be construed liberally. See Haines v. Kerner, 404 U.S. 519-20, (1972). "A pro se litigant should be given a reasonable opportunity to remedy defects in his [or her] pleadings if the factual allegations are close to stating a claim for relief." Hall v. Bellmon, 935 F. 2d 1106, 1110 (10th Cir.1991). Accordingly, such pleadings should be held to a less stringent standard than those drafted by licensed, practicing attorneys.

**Plaintiffs** Flint Edwards and Carlyne Desir ("Plaintiffs") sui juris brings this action Complaint against Defendant BMO Harris Bank N. A (also known as BMO Bank N.A, "Defendant") and allege as follows.

## I.   NATURE OF THE ACTION

1. Plaintiffs have personal firsthand knowledge of the facts, events and competent to testify to the true of the following facts if call in witness.
2. This is an action for declaratory and injunctive relief arising from the improper and undisclosed securitization, Failure to disclose and/or transfer of certain Plaintiffs security instruments or loan agreements originated by Defendant, and **malicious prosecution**.
3. **The complaint regarding these serious issues that has significantly impacted Plaintiffs credit report, reputation and financial standing.**
4. Plaintiff Flint Edwards and Carlyne Desir are natural person who entered into an alleged Loan Agreements, financial transaction with BMO Harris Bank N. A.
5. Plaintiffs seek to determine whether Defendant retains lawful standing to enforce or collect under the subject security instruments or loan agreements, or whether such rights were transferred, assigned, or extinguished through securitization or trust placement. Furthermore, sold, assigned or transfer to debt collectors.
6. **Plaintiffs seeks full financial disclosure, damages for unjust enrichment, and personal liability for all officers involved.**
7. Plaintiffs also seek to enjoin Defendant from further collection, claims or enforcement activity unless and until lawful ownership or authority is established.

## II. JURISDICTION AND VENUE

8. This Court has jurisdiction and Venue because Defendant BMO Harris Bank N. A frequently and routinely conducts business in the State of Florida and Hillsborough County.
9. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) (diversity jurisdiction) as the parties are citizens of different states and the amount in controversy exceeds $75,000.
10. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this judicial district, and the property or business activity affected is located in Florida.

## III. PARTIES

11. Plaintiff Flint Edwards is an individual and resident of Hillsborough County, Florida, and a personal guarantor on the business security instruments or loan agreements at issue.
12. Plaintiff Carlyne Desir is an individual and resident of Hillsborough County, Florida, and a personal guarantor on the business security instruments or loan agreements at issue.
13. Defendant BMO Harris Bank, N.A. is a national banking association with its principal place of business in Chicago, IL, doing business in Florida.

14. This Court has jurisdiction and Venue because Defendant BMO Harris Bank, N.A frequently and routinely conducts business in the State of Florida and Hillsborough County.

## IV. FLINT EDWARDS FACTUAL ALLEGATIONS

15. From 2018 until 2020, Plaintiff entered into a series of commercial financing agreements with General Truck sales of Toledo LLC for the purchase of transportation equipment's, trucks.

16. On or about November 20, 2018, Flint Edwards executed and delivered to General Truck sales of Toledo LLC a Security Agreement for a 2019 Volvo (first Security Agreement). (**Exhibit A,** copies of first Security Agreement)

17. Unknown to Plaintiff at the time of signing, the General Truck sales of Toledo LLC dealership was the original creditors in the transaction and had complete control over the credit terms with Plaintiff Flint Edwards.

18. BMO Harris Bank, N.A was not present for the origination of the transaction. General Truck sales of Toledo LLC assigned the security agreements to BMO Harris Bank, N.A. post execution without disclosing the terms or consideration of the assignment to Plaintiff.

19. BMO Harris Bank, N.A. accepted the assignment of the security agreements and proceeded to assert rights as the orignal creditor despite deficiencies in the original transaction and absence of lawful consideration.

20. Plaintiff have lawfully rescinded the security agreements based upon fraud in the inducement, failure of consideration and material misrepresentation as evidence in prior administrative notice serve upon the defendant.

21. Despite lawful rescission and demand for full accounting defendant have failed and refused to disclose material facts or provide verification of lawful claims.

22. Plaintiff Flint Edwards signed the Security Agreements under non-disclosure, false pretenses with BMO Harris Bank, N.A or General Truck sales of Toledo LLC. The agreements did not disclose that the loans would be pooled, transferred, assigned into a trust and securitized.

23. The Agreement was for BMO Harris Bank, N.A to give Flint Edwards a loan as agreed and required from General Truck sales of Toledo LLC. Defendant BMO Harris Bank, N.A was required to give Flint Edwards a loan for $170.673.00 for the 2019 Volvo.

24. Upon information and belief, Defendant subsequently sold, assigned and securitized the loans agreements into one or more investment trusts or structured finance vehicles. Defendant did not provide Plaintiff with written notice of such transfers as required under Florida Uniform Commercial Code § 679.210.

25. **Despite such transfers, Defendant and its agents have continued to attempt collection, assert enforcement rights, and seek legal remedies against Plaintiff without establishing standing or ownership.**

26. BMO Harris Bank, N.A intentionally obtains Plaintiff security agreements by non-disclosure, concealment and suppression of the material fact that BMO Harris Bank, N.A is not risking any of they own assets in the transaction.

27. **BMO Harris Bank, N.A have the legal duty to act in good faith and disclose all of the material facts relative to the transaction in the loan Security Agreements.**

28. General Truck sales of Toledo LLC gave BMO Harris Bank, N.A Plaintiff security instruments (financial assets). Plaintiff security agreements (assets) have a value equal to the alleged loans or credits that BMO Harris Bank, N.A claim to give to Plaintiff, unjust enrichment.

29. Title to the security agreements (assets) still belongs to Plaintiff Flint Edwards. BMO Harris Bank, N.A did not tender any consideration to bind the transactions.

30. Plaintiff did not enter into a valid contract with General Truck sales of Toledo LLC or receive consideration. There is no evidence of a valid contract with General Truck sales of Toledo LLC or BMO Harris Bank, N.A. Consideration must exist and be tender to support the security agreements.

31. BMO Harris Bank, N.A defaulted on the terms of the security agreements by failing and refusing to give the loans or equal consideration to Flint Edwards as agreed and required therein.

32. **A valid contract requires mutual consideration. Without consideration, there is no enforceable agreement. (Restatement (Second) of Contracts § 17).**

33. **Securitization was something Plaintiff should have been informed about prior to entering into their alleged loan agreements and the securitization was harmful to Plaintiff interests. Securitization Severs Ownership.**

34. BMO Harris Bank, N.A need to provide evidence that they have suffered a loss, especially if the security instruments (notes) were monetized or securitized.

35. In In re Weisband, 427 B.R. 13 (Bankr. D. Ariz. 2010), the court ruled that the securitization of a note removes the originating bank's ability to enforce. If the Plaintiff securitized or transferred the Defendants note, it has forfeited its standing to sue.

36. Plaintiff Flint Edwards need chain of title demonstrating the security instruments (notes) transfer history and BMO Harris Bank, N.A proving It is the rightful owner.

37. Defendant BMO Harris Bank, N.A knowingly and illegal attempting unlawful enforcement of a nonexistent alleged loan agreements debt or security agreements.

38. Defendant BMO Harris Bank, N.A and General Truck sales of Toledo LLC concealed or suppressed material facts with alleged Loan Agreements by telling plaintiff other facts to mislead plaintiff and prevent plaintiff from discovering the concealed or suppressed facts about the alleged Loan Agreements, security agreements.

39. General Truck sales of Toledo LLC and Defendant BMO Harris Bank, N.A concealed or suppressed these facts with the intent to defraud and induce plaintiff to act as described in item IFIR-5. At the time plaintiff acted.

40. plaintiff was unaware of the concealed or suppressed facts and would not have taken the action if plaintiff had known the facts.

41. General Truck sales of Toledo LLC and Defendant BMO Harris Bank, N.A deliberately failed to disclose material facts. **Defendant had a duty to disclose such facts to plaintiff.** Plaintiff was ignorant of the facts and did not have an equal opportunity to discover them.

42. General Truck sales of Toledo LLC and Defendant BMO Harris Bank, N.A intended for plaintiff to act or refrain from acting based on the nondisclosure; and **plaintiff relied on the nondisclosure**, which **resulted in injury**.

43. Accordingly, Flint Edwards is entitled to said properties and judgment by virtue of the default by BMO Harris Bank, N.A.

44. Plaintiff Flint Edwards is the real property owner of the 2019 Volvo.

45. **Plaintiff is therefore left in uncertainty as to the true party in interest and legal status of the debt, and face potential double liability, wrongful enforcement, or erroneous reporting.**

46. Plaintiff reasonably relied on General Truck sales of Toledo LLC and Defendants' actions to their detriment, which resulted in significant financial harm, emotional distress, and damage to Plaintiff.

47. **As a result of Defendant actions, Plaintiff is entitled to** actual damages, including damages for financial and emotional distress, reputational harm, and lost opportunities.

48. Punitive damages to deter Defendant from similar conduct in the future. Court fees and costs of this action, as well as any other relief the Court deems just and proper.

49. An award of actual damages for financial harm, including overpayment of fees, loss of property value, emotional distress, and other direct harm caused by Defendants actions.

50. An award of punitive damages, as determined by the Court, to punish Defendant for their intentional misconduct. As a result, Plaintiff is entitled to actual damages.

## V. CARLYNE DESIR FACTUAL ALLEGATIONS

51. On or about September 28, 2020, Plaintiff entered into a commercial financing agreements with Total Trailer CO LLC for the purchase of transportation equipment's, trailer.

52. On or about September 28, 2020, Carlyne Desir executed and delivered to Total Trailer CO LLC a Security Agreements for a 2020 Vanguard 53 Reefer Trailer together with a 2020 Thermo King C600 (second, Security Agreement). BMO Harris Bank, N.A was not present for the transaction origination. **(Exhibit A,** copy of second Security Agreement).

53. Plaintiff Carlyne Desir signed the Security Agreements under non-disclosure, false pretenses with Total Trailer CO LLC. The agreements did not disclose that the loans would be pooled, transferred, assigned into a trust or securitized.

54. The Agreement was for BMO Harris Bank, N.A to give Plaintiff Carlyne Desir a loan as agreed and required.

55. BMO Harris Bank, N.A was required to give Carlyne Desir $68, 480.00 for the 2020 Vanguard 53 Reefer Trailer together with a 2020 Thermo King C600.

56. Unknown to Plaintiff at the time of signing, the Total Trailer CO LLC was the original creditor in the transaction and had complete control over the credit terms with Plaintiff Carlyne Desir.

57. Total Trailer CO LLC assigned the security agreement to BMO Harris Bank, N.A. post execution without disclosing the terms or consideration of the assignment to Plaintiff.

58. Defendant BMO Harris Bank, N.A. accepted the assignment of the security agreements and proceeded to assert rights as the original creditor despite deficiencies in the original transaction and absence of lawful consideration.

59. Plaintiff have lawfully rescinded the security agreements based upon fraud in the inducement, failure of consideration and material misrepresentation as evidence in prior administrative notice serve upon the defendant.

60. Despite lawful rescission and demand for full accounting defendant have failed and refused to disclose material facts or provide verification of lawful claims.

61. Upon information and belief, Defendant subsequently sold, assigned and securitized the loans into one or more investment trusts or structured finance vehicles.

62. **Despite such transfers, Defendant or its agents have continued to attempt collection, assert enforcement rights, and seek legal remedies against Plaintiff without establishing standing or ownership.**

63. BMO Harris Bank, N.A intentionally obtains Plaintiff security agreements by non-disclosure, concealment and suppression of the material fact that BMO Harris Bank, N.A is not risking any of they own assets in the transaction.

64. BMO Harris Bank, N.A have the legal duty to act in good faith and disclose all of the material facts relative to the transaction in the loan Security Agreements.

65. Total Trailer CO LLC gave BMO Harris Bank, N.A Plaintiff security instruments (assets). Plaintiff security agreements (assets) have a value equal to the alleged loans that BMO Harris Bank, N.A claim to give to Plaintiff, unjust enrichment.

66. Title to the security agreements (assets) still belongs to Plaintiff Carlyne Desir. BMO Harris Bank, N.A did not tender any consideration to bind the transactions.

67. Plaintiff did not enter into a valid contract with BMO Harris Bank, N.A or receive consideration. There is no evidence of a valid contract with BMO Harris Bank, N.A. Consideration must exist and be tender to support the security agreements.

68. Defendant BMO Harris Bank, N.A defaulted on the terms of the security agreements by failing and refusing to give the loans or equal consideration to Plaintiff Carlyne Desir as agreed and required therein.

69. BMO Harris Bank, N.A **Securitization was something Plaintiff should have been informed about prior to entering into their alleged loan agreements and the securitization was harmful to Plaintiff interests.**

70. Defendant did not provide Plaintiff with written notice of such transfers as required under Florida Uniform Commercial Code § 679.210.

71. **Defendant BMO Harris Bank, N.A knowingly and illegal attempting unlawful enforcement of a nonexistent alleged loan agreements debt or security agreements.**

72. Total Trailer CO LLC and Defendant BMO Harris Bank, N.A concealed or suppressed material facts with alleged Loan Agreements by telling plaintiff other facts to mislead plaintiff and prevent plaintiff from discovering the concealed or suppressed facts about the alleged Loan Agreements, security agreements.

73. Total Trailer CO LLC and Defendant BMO Harris Bank, N.A concealed or suppressed these facts with the intent to defraud and induce plaintiff to act as described in item IFIR-5. At the time plaintiff acted.

74. Plaintiff was unaware of the concealed or suppressed facts and would not have taken the action if plaintiff had known the facts.

75. Total Trailer CO LLC and Defendant BMO Harris Bank, N.A deliberately failed to disclose material facts. **Defendant had a duty to disclose such facts to plaintiff.** Plaintiff was ignorant of the facts and did not have an equal opportunity to discover them.

76. Total Trailer CO LLC and Defendant BMO Harris Bank, N.A intended for plaintiff to act or refrain from acting based on the nondisclosure; and plaintiff relied on the nondisclosure, which resulted in injury.

77. Accordingly, Plaintiff Carlyne Desir is entitled to said properties and judgment by virtue of the default by BMO Harris Bank, N.A.

78. Plaintiff Carlyne Desir is the real property owner of 2020 Vanguard 53 Reefer Trailer together with a 2020 Thermo King C600.

79. Plaintiff is therefore left in uncertainty as to the true party in interest and legal status of the alleged debt, and face potential double liability, wrongful enforcement, or erroneous reporting.

80. **Plaintiff reasonably relied on Defendants' actions** to their detriment, which resulted in significant financial harm, emotional distress, and damage to Plaintiff.

81. **As a result of Defendant actions, Plaintiff is entitled to** actual damages, including damages for emotional distress, reputational harm, and lost opportunities.

82. Punitive damages to deter Defendant from similar conduct in the future. Court fees and costs of this action, as well as any other relief the Court deems just and proper.

83. An award of actual damages for financial harm, including overpayment of fees, loss of property value, emotional distress, and other direct harm caused by Defendants actions.

84. An award of punitive damages, as determined by the Court, to punish Defendant for their intentional misconduct. As a result, Plaintiff is entitled to actual damages.

## VI. FLINT EDWARDS CLAIM FOR DECLARATORY RELIEF

85. DECLARATORY RELIEF (28 U.S.C. §§ 2201–2202 and Florida Common Law).

86. Plaintiff Flint Edwards realleges paragraphs (15) through (50) as though fully stated herein.

87. An actual and justiciable controversy exists between Plaintiffs and Defendant as to whether BMO Harris Bank, N.A is the lawful owner and holder of the subject loans and whether it may enforce collection rights.

88. **BMO Harris Bank, N.A Securitization of the Loans and Loss they Secured Interest.**

89. **Plaintiff conducted a UCC-11 search, which confirmed that BMO Harris Bank, N.A has not filed a financing statement to perfect its liens. Without this critical step, the liens are unperfected and unenforceable, leaving no secured interest in Plaintiff equipment's, truck and trailer.**

90. Under Florida Statutes Chapter 679 (UCC Article 9), creditors must provide notice of assignments or ownership transfers.

91. Defendant failed to comply with applicable UCC rules, impairing Plaintiff' ability to identify the proper party in interest and protect its legal rights.

92. BMO Harris Bank, N.A omit the securitization out of Plaintiff contracts.

93. BMO Harris Bank, N.A, as part of its business model, routinely securitizes equipment financing. This process involves bundling loans and selling them as asset-backed securities to investors.

94. Evidence of BMO Harris Bank, N.A securitization practices can be found in its SEC filings, including recent transactions under, BMO Financial Group Reports Third Quarter 2024 Results, Transportation Finance Equipment Trust Receivables.

95. Supporting SEC public Filings documenting BMO Harris Bank, N.A aka BMO Bank, N.A loans securitization practices. (**Exhibit B**, SEC filing)

96. When BMO Harris Bank, N.A securitized the security instruments (promissory notes) associated with Plaintiff Equipment's, it likely severed the security instruments note from the lien, creating a legal bifurcation. Under Carpenter v. Longan, 83 U.S. 271 (1872), a lien becomes invalid if it is separated from the note.

97. This bifurcation results in the destruction of any enforceable security interest, as the lien no longer attaches to the collateral. Certificate of Title Statutes Do Not Override UCC Requirements.

98. UCC 57-9A-311(a)(2) explicitly states that recording a lien on the title without perfecting the security interest renders the lien unenforceable. Based on BMO Harris Bank, N.A failure to perfect its liens under UCC law and the loss of its secured interest.

99. Plaintiff Seek removal of the liens, suppression of copies, and a clear title.

100. **Defendant has unjustly received payments and/or retained rights over the loans without legal standing or authority due to unrecorded, undisclosed, or improper transfer/securitization.**

101. Defendant failed to comply with applicable UCC rules, impairing Plaintiff's ability to identify the proper party in interest and protect its legal rights.

102. BMO Harris Bank, N.A to issue a clear title in Plaintiff name as the rightful and sole owner of the equipment's.

103. Plaintiffs assert that the security instruments are void due to non-disclosure, failure to disclose and failure of consideration. Defendants maintain adverse claims to rights and interests under the security agreements.

104. Plaintiff Flint Edwards from asserting defenses such as improper service, lack of personal jurisdiction in Osceola County court case.

105. Notarized Affidavit, Affirming Plaintiff ownership of the equipment's and the lack of a valid lien.

106. An actual controversy exists between plaintiff and defendant regarding the enforceability of the security instruments.

107. Declaratory relief is necessary to resolve the controversy and determine the rights parties' legal rights and obligations. Plaintiff is entitled to a declaration from this Court establishing:

a) Whether Defendant lawfully owns or holds the subject loans and gave consideration.
b) Whether any transfer or securitization extinguished Defendant's standing to enforce the loan agreements;
c) Whether further collection or enforcement by Defendant is lawful.

## VII. FLINT EDWARDS CLAIM FOR INJUNCTIVE RELIEF

108.    Plaintiff Flint Edwards realleges paragraphs (15) through (50) as though fully stated herein.

109.    PLAINTIFF CHALLENGE TO STANDING. BMO Harris Bank, N.A cannot file a lawsuit for void contract agreements.

110.    Plaintiff Flint Edwards invoke UCC and common law protections to void the contracts and obtain relief under the UCC fraudulent inducement to contract agreements because lacking Full disclosure is considered void ab initio.

111.    Pursuant to Capron v. Van Noorden, 6 U.S. 126 (1804), jurisdiction must be established before this Court may proceed. **BMO Harris Bank, N.A has failed to demonstrate standing, legal authority, or a valid cause of action under contract law.**

112.    Plaintiff demands strict proof of claim, including A valid contract bearing the Plaintiff wet-ink signature. A full and itemized accounting of the alleged balance and offset balance sheet.

113.    BMO Harris Bank, N.A **collected on the alleged loans that are void and uncollectible** because BMO Harris Bank, N.A failure of consideration and failure of disclosure. BMO Harris Bank, N.A **illegally collected on the alleged loans and took monthly payments from Plaintiff on alleged loan debts that Plaintiff do not owe, unjust enrichment.**

114.    BMO Harris Bank, N.A profited from misleading Plaintiff Flint Edwards and investors, also violating securities laws.

115.    Plaintiff Flint Edwards rescinds all payments to the alleged loans debt that were paid to BMO Harris Bank, N.A as they were in error.

116.    Plaintiff Flint Edwards **is NOT obligated by any contracts or agreements obtained under conditions of deceit and non-disclosure to pay.**

117.    Plaintiff Flint Edwards unknowingly signing the security agreements that is immediately monetized and traded on the securities market, Securitization. BMO Harris Bank, N.A transforms the so-called "loans" into a negotiable financial instrument, a promissory note without Plaintiff knowledge.

118.    BMO Harris Bank, N.A presented the security instruments as loan agreements, but in reality, they securitize the instruments for profit without Plaintiff knowledge.

119.    The notes were bundled with others, sold to investors, and traded in the financial markets. BMO Harris Bank, N.A offload their risk, collect upfront payments from investors, and yet still demand repayments from Plaintiff Flint Edwards.

120.    Defendant BMO Harris Bank, N.A gain profits by illegally manipulating and deceiving Plaintiff Flint Edwards and investors.

121.    The "Loans" Is Not a Loans. It is merely a securities transaction where BMO Harris Bank, N.A never lends real money but instead monetizes Plaintiff Flint Edwards and CNI EXPRESS LLC security instruments, financial assets.

122.    This method consistent with fractional reserve banking was not fully disclosed to Plaintiff Flint Edwards. Without this disclosure BMO Harris Bank,

N.A actions misled Plaintiff Flint Edwards into believing that Plaintiff Flint Edwards was receiving BMO Harris Bank, N.A own money and making Plaintiff Flint Edwards feel obligated to pay it back each month.

123.    BMO Harris Bank, N.A **relinquishes its equitable title** the moment the promissory notes, security instruments are assigned and sold, meaning they have **no legal claim to demand repayment.**

124.    Pooling and Servicing Deception. Even after selling the security instruments (notes), BMO Harris Bank, N.A continue acting as "servicers" to collect money on behalf of investors while concealing the true ownership of the accounts. Plaintiff was never informed that Plaintiff security instruments (notes) are immediately transformed into financial assets and traded without my consent.

125.    This practice is a clear violation of contractual transparency and an outright deception designed to entrap Plaintiff into endless financial servitude.

126.    **If BMO Harris Bank, N.A no longer own the security agreements, Loan Agreements. How can they Replevin truck and trailer and for Plaintiff to surrender the Tractor and Trailer?**

127.    BMO Harris Bank, N.A lacking the Full disclosure and transparency required by law and contracts.

128.    BMO Harris Bank, N.A used Plaintiff security agreements as collateral to create credit not using BMO Harris Bank, N.A own capital; this process **lacks transparency leading to non-disclosure which render such agreements void ab initio.**

129.    **Any alleged damages to BMO Harris Bank, N.A (which CNI EXPRESS LLC and Plaintiff Flint Edwards expressly deny) were caused, in whole or in part, by the acts, inaction, conduct, and or omissions of BMO Harris Bank, N.A.**

130.    **Any agreements that were not fully disclosed to CNI EXPRESS LLC, and Plaintiff Flint Edwards is void. Such a contracts or agreements are null and void, as if it never existed at all, and all to return to the lawful owner plus reasonable money and interest.**

131.    **"Fraud vitiates the most solemn contracts, documents and even judgments" [U.S. vs. Throckmorton, 98 us 61, at pg.65].**

132.    **This deceit and lack of essential information makes the agreement void ab initio.**

133.    **Alleged Contracts was NOT Fully Disclosure as required by law. If either party fails to make full disclosure the contract is null and void.**

134.    Without proper documentation and Proof of consideration, BMO Harris Bank, N.A lacks legal standing to collect and must cease all collection efforts immediately.

135.    Plaintiff Flint Edwards face imminent and irreparable harm from Defendant's continued collection efforts, legal actions, or adverse credit reporting to business without proof of lawful authority.

136.    Plaintiff Flint Edwards have no adequate remedy at law, as monetary damages cannot remedy the uncertainty and damage to reputation and business operations from **unlawful enforcement.**

137.    Plaintiff Edwards seek a permanent injunction prohibiting Defendant from:

a.) Initiating or continuing collection or enforcement efforts;

b.) Repossessing any equipment or assets;

c.) Reporting adverse information to third parties;

—unless and until Defendant **establishes legal ownership and standing**.


## VIII. CARLYNE DESIR CLAIM FOR DECLARATORY RELIEF

138.    DECLARATORY RELIEF (28 U.S.C. §§ 2201–2202 and Florida Common Law).

139.    Plaintiff Carlyne Desir realleges paragraphs (51) through (84) as though fully stated herein.

140.    An actual and justiciable controversy exists between Plaintiffs and Defendant as to whether BMO is the lawful owner, holder, or servicer of the subject loans and whether it may enforce collection rights.

141.    BMO Harris Bank, N.A cannot file a lawsuit for void contract agreements.

142.    BMO Harris Bank, N.A **collected on the alleged loans that are void and uncollectible** because BMO Harris Bank, N.A failure of consideration and failure of disclosure.

**143.    Defendant BMO Harris Bank, N.A illegally collected on the alleged loans and took monthly payments from Plaintiff Carlyne Desir on alleged loan debts that Plaintiff do not owe, unjust enrichment.**

144.    BMO Harris Bank, N.A profited from misleading Plaintiff Carlyne Desir and investors, also violating securities laws.

145.    Plaintiff Carlyne Desir rescinds all payments to the alleged loans debt that were paid to security instruments accounts as they were in error.

**146.    Plaintiff Carlyne Desir is NOT obligated by any contracts or agreements obtained under conditions of deceit and non-disclosure to pay.**

147.    No sworn complaint from injured party, Bradley J. Anderson filed the case. **Case No. 2023 CA 003244 CI is void. A void order is incurably void, and all proceedings based on the invalid claim or void act are also void.** A judgment rendered by a court without personal jurisdiction over the defendant is void. (**Exhibit C**, Bradley J. Anderson signed Complaint)

148.    Plaintiff Carlyne Desir unknowingly signing the security agreements that is immediately monetized and traded on the securities market, Securitization. BMO Harris Bank, N.A transforms the so-called "loans" into a negotiable financial instrument, a promissory note without Plaintiff knowledge.

149.    Defendant BMO Harris Bank, N.A presented the security instruments as loan agreements, but in reality, they securitize the instruments for profit without Plaintiff knowledge.

150.    The instruments (notes) were bundled with others, sold to investors, and traded in the financial markets. BMO Harris Bank, N.A offload their risk, collect upfront payments from investors, and yet still demand repayments from Defendants.

151.    BMO Harris Bank, N.A gain profits by illegally manipulating and deceiving CNI EXPRESS LLC, Carlyne Desir and investors.

152.    The "Loans" Is Not a Loans. It is merely a securities transaction where BMO Harris Bank, N.A never lends real money but instead monetizes Plaintiff Carlyne Desir security instruments, financial assets.

153.    This method consistent with fractional reserve banking was not fully disclosed to Plaintiff Carlyne Desir. Without this disclosure BMO Harris Bank, N.A actions misled Plaintiff Carlyne Desir into believing that Carlyne Desir was receiving BMO Harris Bank, N.A own money and making Plaintiff Carlyne Desir feel obligated to pay it back each month.

154.    **Modern Money Mechanics** as it was originally published by the Federal Reserve Bank of Chicago. (**Exhibit D**, **Modern Money Mechanics** Attached)

155.    BMO Harris Bank, N.A **relinquishes its equitable title** the moment the security agreements (promissory notes) are assigned and sold, meaning they have **no legal claim to demand repayment**.

156.    Pooling and Servicing Deception. Even after selling the notes BMO Harris Bank, N.A continue acting as "servicers" to collect money on behalf of investors while concealing the true ownership of the debts.

157.    No Full Disclosure. Defendants were never informed that our notes are immediately transformed into financial assets and traded without our consent.

158.    This practice is a clear violation of contractual transparency and an outright deception designed to entrap defendants into endless financial servitude.

159.    **If** BMO Harris Bank, N.A **no longer own the promissory note/security agreements, Loan Agreements how can they Replevin and defendants can't surrender the Tractor and Trailer?**

160.    BMO Harris Bank, N.A lacking the Full disclosure and transparency required by law and contracts.

161.    BMO Harris Bank, N.A used Plaintiff security agreement as collateral to create credit not using BMO Harris Bank, N.A own capital; this process **lacks transparency leading to non-disclosure which render such agreements void ab initio**.

162.    **Any alleged damages to BMO Harris Bank, N.A (which CNI EXPRESS LLC, Flint Edwards and Carlyne Desir expressly deny) were caused, in whole or in part, by the acts, inaction, conduct, and or omissions of** BMO Harris Bank, N.A.

163.    **Any agreements that were not fully disclosed to CNI EXPRESS LLC, and Carlyne Desir is void. Such a contracts or agreements are null and void, as if it never existed at all, and all to return to the lawful owner plus reasonable money and interest.**

164. **This deceit and lack of essential information makes the agreement void ab initio.**
165. **Alleged Contracts was NOT Fully Disclosure as required by law. If either party fails to make full disclosure the contract is null and void.**
166. BMO Harris Bank, N.A loans and lien agreements, lack of perfection, and bifurcation. BMO Harris Bank, N.A failure to perfect the liens. Plaintiff Challenging the Validity of BMO Harris Bank, N.A Liens.
167. Plaintiff Suppress Inadmissible Copies. Copies of the security instruments (note) are invalid without producing the originals.
168. Plaintiff Seek removal of the lien, suppression of copies, and a clear title.
169. BMO Harris Bank, N.A omit the securitization out of Plaintiff contracts.
170. BMO Harris Bank, N.A, as part of its business model, routinely securitizes equipment financing. This process involves bundling loans and selling them as asset-backed securities to investors.
171. Evidence of BMO Harris Bank, N.A securitization practices can be found in its SEC filings, including recent transactions under, BMO Financial Group Reports Third Quarter 2024 Results, Transportation Finance Equipment Trust Receivables.
172. Supporting SEC Filings documenting BMO Harris Bank, N.A aka BMO Bank, N.A loans securitization practices. (SEC filing, attached)
173. When BMO Harris Bank, N.A securitized the security instruments (promissory notes) associated with Plaintiff Equipment's, it likely severed the security instruments note from the lien, creating a legal bifurcation. Under Carpenter v. Longan, 83 U.S. 271 (1872), a lien becomes invalid if it is separated from the note.
174. This bifurcation results in the destruction of any enforceable security interest, as the lien no longer attaches to the collateral. Certificate of Title Statutes Do Not Override UCC Requirements.
175. UCC 57-9A-311(a)(2) explicitly states that recording a lien on the title without perfecting the security interest renders the lien unenforceable.
176. Based on BMO Harris Bank, N.A failure to perfect its liens under UCC law and the loss of its secured interest.
177. Plaintiff Seek removal of the lien, suppression of copies, and a clear title.
178. BMO Harris Bank, N.A to issue a clear title in Plaintiff name as the rightful and sole owner of the equipment's.
179. Plaintiff Carlyne Desir from asserting defenses such as improper service, lack of personal jurisdiction in Osceola County court case.
180. Notarized Affidavit, Affirming Plaintiff ownership of the equipment's and the lack of a valid lien.
181. Declare that the Plaintiff is entitled to a clear title to the trailer, free of any lien or encumbrance. Plaintiff Carlyne Desir entitled to a declaration from this Court establishing:

a) Whether Defendant lawfully owns, services, or holds the subject loans;
b). Whether any transfer or securitization extinguished Defendant's standing to enforce the loan agreements;

c) Whether further collection or enforcement by Defendant is lawful.

## IX. CARLYNE DESIR CLAIM FOR INJUNCTIVE RELIEF

182.    Plaintiff Carlyne Desir realleges paragraphs (51) through (84) as though fully stated herein.

183.    Additionally, Plaintiff has reason to believe that Defendant has securitized the security instruments (note) associated with the trailer, as evidenced by the Defendants publicly available prospectus filed with the U.S. Securities and Exchange Commission (SEC) attached.

184.    BMO Harris Bank, N.A omit the securitization out of Plaintiff contracts.

185.    The Defendant securitization activities raise substantial questions about whether adequate consideration was provided, whether the security instruments (note) and lien remain united, and whether the Defendant retains standing to enforce the security instruments (note) or lien.

186.    Evidence of consideration, including proof that Defendant lent its own funds. Failure to demonstrate adequate consideration or a clear chain of title renders the security instruments (note) and lien invalid.

187.    Modern technology enables the manipulation or forgery of signatures, and only the original document can establish authenticity. Plaintiff moves to suppress all copies of the security instruments (note) unless the Defendant can produce the original for inspection.

**188.    Plaintiff Carlyne Desir face imminent and irreparable harm from Defendant's continued collection efforts, legal actions, or adverse business credit reporting without proof of lawful authority.**

189.    Without proper documentation, BMO Harris Bank, N.A lacks legal standing to collect and must cease all collection efforts immediately.

190.    Plaintiff Carlyne Desir have no adequate remedy at law, as monetary damages cannot remedy the uncertainty and damage to reputation and business operations from **unlawful enforcement**.

191.    Cease all collection activities until debt validation is provided. Remove any negative credit reporting if validation is not met.

192.    Dismiss the case **No. 2023 CA 003244 CI** with prejudice if the Defendant BMO Harris Bank, N.A cannot produce proper evidence.

193.    In First National Bank of Montgomery v. Jerome Daly (1969), the court ruled that the bank did not lend its own funds thus instead monetized the borrower's promissory note. This failure of consideration invalidated the contract.

194.    Under contract law, consideration must be something of value exchanged by both parties. A loan agreement created solely from the borrower's promissory note fails to meet this requirement. (Restatement (Second of Contracts $771)

195.    Injunction barring the plaintiff and its agents from making any future claims on these alleged debts.

**196.    The only valid lien that has been properly recorded or is currently enforceable as to the equipment in question is for CD LEGACY TRUST. (Exhibit E,** UCC lien**)**

197.    **If the BMO Harris Bank, N.A fails to validate the debt within 21 days, it constitutes an admission that no valid claim exists, and the case No. 2023 CA 003244 CI must be dismissed with prejudice.**

198.    Plaintiff requests punitive damages against the Defendant BMO Harris Bank, N.A for willful and malicious collection attempts, as the Defendant BMO Harris Bank, N.A knew or should have known that they lacked standing to collect.

199.    Plaintiff Carlyne Desir seek a permanent injunction prohibiting Defendant from:

a) Initiating or continuing collection or enforcement efforts;

b) Repossessing any equipment or assets;

c.) Reporting adverse information to third parties.

—unless and until Defendant **establishes legal ownership or standing**.

## PRAYER FOR RELIEF

WHEREFORE, Defendant consider the said contract paid in full and immediately release any liens and all encumbrances on the accounts. Plaintiffs demand **Immediate forensic accounting of all transactions** related to Plaintiff Flint B Edwards and Carlyne Desir alleged loans Agreements or security agreements obligation (ex: GAAP, Provide Pooling and Servicing Agreements (PSA). Plaintiffs respectfully requests this Court dismiss the case **No. 2023 CA 003244 CI** with prejudice, or in the alternative, order strict proof of claim, Declaratory and injunctive relief. BMO Harris Bank, N.A filed a **SHAM Complaint, BAD FAITH, False suit, false act, PURPOSELY WITH MALICE. Plaintiffs Flint Edwards and Carlyne Desir respectfully requests that this Court grant a Permanent Injunction, ordering Defendant to cease and desist from the following actions.**

**Return of any misappropriated funds, original security instruments or promissory notes with no alteration for unjust enrichment.** Plaintiffs Flint Edwards and Carlyne Desir are claiming all credit due on the accounts, including off-balance sheet ledgering. Plaintiffs Flint Edwards and Carlyne Desir requests this Court to grant judgment and relief against BMO Harris Bank, N.A and to this Court's own equity powers.

1. Declare whether Defendant has lawful standing or ownership of the subject loan Agreements, security agreements. Declare the liens invalid and unenforceable.

2. That only the original note is admissible as evidence. Enjoin Defendant from any further collection, enforcement, or repossession activity unless standing is proven.

3. Order restitution or disgorgement of payments made without proper authority. Declared that the security instrument between plaintiffs and defendants is null, void and unenforceable.

4. Declaratory relief voiding invalid loans debt collection claims. Declare Loan satisfaction, release of Liens and dismissal of pass, current and future court actions.

5. Declare that defendant have no lawful claims or interests arise from the security instruments. Award court fees and costs, if permitted by statute or contract;

6. Award Plaintiffs such additional relief as the Court may deem just and proper.

**FURTHERMORE**, Let the record reflect Plaintiffs Flint Edwards and Carlyne Desir is required to provide an innocent explanation in good faith, a show of cause why Plaintiffs Flint Edwards and Carlyne Desir should not be paid one million dollars in the form of a negotiable instrument or check payable to the bearer on demand for ($1,000,000.00) sanctioned for defending oneself against such false pretenses, fraud, violations, liability, false act, BAD FAITH, wrongdoing, fabrication, frivolous and fraudulent actions, Claims under the law or be it resolved Flint Edwards and Carlyne Desir. **DONE IN GOOD FAITH.**

**It would be unjust to allow one who made false representations to retain the fruits of a bargain induced by such representations." Whipp v. Iverson, 43 Wis 2d 166. We have NOT seen any evidence to support any allegations to the contrary, and I believe no such evidence exists.**

**DEMAND FOR JURY TRIAL-** Plaintiffs demand a **jury trial** on all claims so triable.

By: Edwards: Flint sui juris 12935 Willow Grove Dr
All Rights Reserved, without Recourse
Without Prejudice, U.C.C. 1-207, 1-308, 1-103
By: Edwards Flint, Secured Party Creditor, Authorized
Representative, Attorney-In-Fact in behalf of
Executor of the Estate FLINT EDWARDS, Ens legis
Authorized representative of FLINT B EDWARDS
Flint B Edwards beneficiary

BY: Desir Carlyne, sui juris
Carlyne Desir All Rights Reserved,
Without Prejudice, U.C.C. 1-207, 1-308, 1-103

Representative, Attorney-In-Fact in behalf of
Executrix of the Estate CARLYNE DESIR, Ens legis
Carlyne Desir beneficiary

We declare under penalty of perjury that the foregoing is true and accurate to the best of my
knowledge, information and belief, that the COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, DEMAND FOR DISCOVERY AND JURY TRIAL by Plaintiff
declaration is executed in Florida, dated May 1, 2025.

The use of a notary below is for identification only and not for entrance into any foreign
jurisdiction

## NOTARY PUBLIC

Hillsborough County          )

                             )  ss.      JURAT

Florida Republic             )

On this ___1st___ day of __May_____, 2025, before me, the undersigned, a
Notary Public in and for Hillsborough County, personally appeared the above-signed,
known to me to be the one whose name is signed on this instrument, and has
acknowledged to me that he/she has executed the same

Signed _____

**TERRY-ANN TAYLOR-BECKFORD**
Notary Public
State of Florida
Comm# HH251826
Expires 4/11/2026

Notary name  Terry-Ann Taylor-Beckford

My commission expires: __4/11/26_____  (NOTARY SEAL)

I am before the court without waiving any rights remedies or defenses, statutory or procedural

UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA DIVISION

**FLINT EDWARDS AND CARLYNE DESIR,**

PLAINTIFF

Case No

VS.

**BMO HARRIS BANK N.A**

DEFENDANT

## AFFIDAVIT OF FLINT EDWARDS AND CARLYNE DESIR OWNERSHIP AND BMO HARRIS BANK N.A LACK OF VALID LIEN WITH

BEFORE ME, the undersigned authority, personally appeared FLINT EDWARDS and CARLYNE DESIR, who, being duly sworn, depose and state as follows:

1. We are the Plaintiffs in the above-captioned action and competent to testify to the matters stated herein.

2. We are over the age of 18 and competent to make this Affidavit.

3. Flint Edwards and Carlyne Desir resides in Hillsborough County State of Florida.

4. Flint Edwards and Carlyne Desir have personal firsthand knowledge of the facts, events and competent to testify to the true of the following facts if call in witness.

5. CNI EXPRESS LLC, Flint Edwards and Carlyne Desir denies all allegations made by BMO Harris Bank, N.A and any affiliated party due to a lack of sufficient information and belief.

6. We are the lawful owners of certain commercial transportation equipment, including but not limited to trucks and trailers, as described in the business loan agreements previously entered into with General Truck sales of Toledo LLC and Total Trailer CO

1

LLC assigned to BMO Harris Bank, N.A from dealership (security instrument or Alleged Loan Agreements, **Exhibit A and B**, in the COMPLAINT)

**Property description: 2019 Volvo, VNL-Series: 860: VNL64T860 6x4** Tractor, VIN: **4V4NC9EJ6KN203312** and 2020 Vanguard 53' Reefer Trailer VIN # 527SR5326LL018006, together with a 2020 Thermo King C600, Make CIMC, MODEL TL, BODY RF, **VIN # 6001325579**, Title # 16125938.

7. We affirm that said equipment's was purchased for use by CNI Express LLC and is titled in our names or the name of the business.

8. Upon information and belief, BMO Harris Bank, N.A. no did not hold a valid, enforceable security interest or lien against said equipment's, truck and truck.

9. The only valid lien that has been properly recorded or is currently enforceable as to the equipment in question is for CD LEGACY TRUST. **(Exhibit E,** UCC lien in complaint)

10. To the best of our knowledge, information, and belief, there only one existing valid, lawful, or enforceable lien or encumbrance upon the Equipment identified above. Any claims or assertions to the contrary are without factual or legal basis and are hereby contested.

11. We have not received proper documentation evidencing BMO Harris Bank, N.A. continuing authority to enforce any such liens, nor have we been notified of any valid assignment or transfer of the security interest to a third party.

12. Any claim made by BMO Harris Bank N.A., or any affiliated party, alleging a lien or right to possess the Equipment's is inaccurate, unauthorized, and made without supporting documentations or proper legal authority.

13. We affirm our continued rights of ownership, possession, and control of the Equipment's and request that any alleged or purported liens be declared void and unenforceable by this Court.

14. We make this affidavit in support of our request for declaratory and injunctive relief and to affirm our full ownership rights over the subject properties.

FURTHER AFFIANTS SAYETH NAUGHT.

By: Edwards Flint sui juris 12935 Willow Grove Dr
All Rights Reserved, without Recourse
Without Prejudice, U.C.C. 1-207, 1-308, 1-103

2

By Edwards Flint, Secured Party Creditor. Authorized
Representative. Attorney-In-Fact in behalf of
Executor of the Estate FLINT EDWARDS, Ens legis
Authorized representative of FLINT B EDWARDS
Flint B Edwards beneficiary

BY Desir Carlyne, sui juris
Carlyne Desir All Rights Reserved,
Without Prejudice, UCC 1-207, 1-308, 1-103
Representative. Attorney-In-Fact in behalf of
Executrix of the Estate CARLYNE DESIR, Ens legis
Carlyne Desir beneficiary

We declare under penalty of perjury that the foregoing is true and accurate to the best of my
knowledge, information and belief, that the AFFIDAVIT OF FLINT EDWARDS AND
CARLYNE DESIR OWNERSHIP AND BMO HARRIS BANK N.A LACK OF VALID
LIEN by Plaintiff declaration is executed in Florida, dated May 4, 2025.

The use of a notary below is for identification only and not for entrance into any foreign
jurisdiction

**NOTARY PUBLIC**

Hillsborough County          )
                             )  ss.    **JURAT**
Florida Republic             )

TERRY-ANN TAYLOR-BECKFORD
Notary Public
State of Florida
Comm# HH251826
Expires 4/11/2026

On this __4th__ day of __May_____, 2025, before me, the undersigned, a
Notary Public in and for Hillsborough County, personally appeared the above-signed,
known to me to be the one whose name is signed on this instrument, and has
acknowledged to me that he/she has executed the same

Signed: _____

Notary name: Terry-Ann Taylor-Beckford

My commission expires: 4/11/26 _____(NOTARY SEAL)

3

# EXHIBIT A

DocuSign Envelope ID: 89231378-BD35-4106-9B6F-4908FF627189

THIS IS A COPY
This is a copy view of the Authoritative Copy held
by the designated custodian

 **BMO** Transportation Finance

# LOAN AND SECURITY AGREEMENT

The undersigned debtor, meaning all debtors jointly and severally ("Debtor"), to secure the obligations set forth herein grants to the Lender named below (with its successors and assigns, "Lender") under the terms and provisions of this agreement (this "Agreement") a security interest in the following property (with all present and future attachments, accessions, accessories, replacement parts, repairs and additions or substitutions, "Equipment"):

| Year | Manufacturer | Model | Description | Serial Number |
|------|--------------|-------|-------------|---------------|
| 2019 | VOLVO | VNL-SERIES | VNL-SERIES: 860: VNL64T860 6X4 | 4V4NC9EJ6KN203312 |

## PAYMENT SCHEDULE

Debtor promises to pay Lender principal plus pre-computed interest and any administrative fee set forth below (the "Total Amount") of $223,648.80 in 60 installments as follows:

(a) $3,727.48 on JANUARY 5, 2019 and a like sum on the like date of each month thereafter until fully paid.

(b) In irregular installments as follows:

# of Payments    Payment Amount    Payment Date

provided, however, that the final installment shall be in the amount of the then remaining unpaid balance plus any and all other accrued and unpaid sums due hereunder.

The interest under this Agreement is pre-computed. The Total Amount is calculated based on interest accruing at an interest rate of 10.75% per annum based on a 360-day year of twelve 30-day months, plus the administrative fee, if any, spread over the life of the loan. The total cost of credit includes such accrued interest and the administrative fee of $500.00 equating to an annual percentage rate of 10.85% based on a 360-day year of twelve 30-day months. Late payments may affect the actual total amount payable due to payment of delinquency charges and/or increased accrued interest. If the Payment Schedule contains (i) a period of longer than a month before the first Payment Date (the excess number of days herein referred to as a "Stub Period") or (ii) any month or months in which a Payment Amount is either not due or is in an amount less than the accrued interest for such month (in either event, such period herein referred to as a "Skip Period"), then at the option of Lender, to the extent permitted by law, the unpaid and accrued interest for such Stub Period or Skip Period may be added to the unpaid principal amount hereunder and shall thereafter accrue interest at the interest rate set forth above.

DELINQUENCY: FOR EACH INSTALLMENT NOT PAID WHEN DUE, DEBTOR AGREES TO PAY LENDER A DELINQUENCY CHARGE CALCULATED ON THE AMOUNT OF SUCH INSTALLMENT AT THE RATE OF 5% OF SUCH INSTALLMENT IF NOT PROHIBITED BY LAW, OTHERWISE AT THE HIGHEST RATE THAT DEBTOR CAN LEGALLY OBLIGATE ITSELF TO PAY AND/OR LENDER CAN LEGALLY COLLECT.

## USE OF PROCEEDS

Lender is hereby irrevocably authorized and directed to disburse the proceeds of this Agreement as follows:

| Amount | Payee (Name and Address) |
|--------|--------------------------|
| $170,673.00 | GENERAL TRUCK SALES OF TOLEDO LLC |
| | 5801 SUDER AVE |
| | TOLEDO, OH 43611 |
| $599.55 | FLORIDA DEPARTMENT OF REVENUE |
| | 5050 W TENNESSEE STREET |
| | TALLAHASSEE, FL 32399 |

Disbursement may be made in Lender's name on Debtor's behalf or in Debtor's name. Disbursement in accordance with the above instructions or any written supplement to these instructions will constitute payment and delivery to and receipt by Debtor of all such proceeds.

PAYMENT ADDRESS: All amounts payable under this Agreement are payable at Lender's address shown below or at such other address as Lender may specify from time to time in writing. All written communication concerning disputed amounts, including any check or other payment instrument that (i) indicates that the written payment constitutes "payment in full" or is tendered as full satisfaction of a disputed amount or (ii) is tendered with other conditions or limitations (collectively a "Disputed Payment") must be mailed or delivered to us at the address for billing inquiries shown on the invoice or statement and not to the payment address.

### 1.0    THE EQUIPMENT

1.1    **Disclaimer.** LENDER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY, OR FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED. Debtor's obligations hereunder are absolute and unconditional notwithstanding the existence, location or condition of any item of Equipment or its suitability for use in Debtor's business.

1.2    **Equipment Receipt and Use.** Debtor warrants and agrees that: the proceeds of the loan and the Equipment will be used solely for business and commercial purposes; the Equipment is free from and will be kept free from all liens, claims, security interests and encumbrances other than that created hereby; Debtor will not, without Lender's prior written consent, sell, rent, lend, encumber, pledge, transfer, secrete or otherwise dispose of any of the Equipment, nor will Debtor permit any such act; the Equipment will be maintained in good operating condition, repair and appearance, and will be used and operated with care, only by qualified personnel in the regular course of Debtor's business; the Equipment shall remain personal property and not become part of any real property regardless of the manner of affixation; Lender may inspect the Equipment and all books and records relating to the Equipment or Debtor's performance under this Agreement at all reasonable times and from time to time; the Equipment will be kept at Debtor's place of business which is indicated immediately below Debtor's signature and will not be removed from said location without the prior written consent of Lender, except that an item of Equipment may be used away from said location in the regular course of Debtor's business provided that (a) such item is not removed from the United States (except for occasional use in Canada), and (b) if such item is not returned to said location within 30 days, Debtor will immediately upon Lender's request and each 30 days thereafter until the item is returned report the then current location thereof to Lender in writing.

1.3    **Insurance.** Debtor shall at all times bear all risk of loss of, damage to or destruction of the Equipment, and shall notify Lender if any of the Equipment is lost, damaged or destroyed. Debtor agrees to maintain insurance on the Equipment for the actual cash value thereof and for the life of this Agreement, covering all risks of physical loss or damage and such other risks as Lender may require, in form and amount and with insurers chosen by Debtor and satisfactory to Lender. Debtor agrees to deliver promptly to Lender certificates or, if requested, policies of insurance satisfactory to Lender, each with a standard long-form loss-payable endorsement naming Lender, its agent or such other party as Lender may from time to time instruct, and the successors and assigns, as their interests may appear. Each policy shall provide that Lender's interest therein will not be invalidated by the acts, omissions or neglect of anyone other than Lender, and shall provide that coverage may not be canceled or altered by the insurer except upon 30 days prior written notice to Lender. Debtor's acceptance of policies in lesser amounts or risks will not be a waiver of Debtor's foregoing obligation. Debtor assigns to Lender all proceeds of any physical damage insurance maintained by Debtor with respect to the Equipment and any and all returned premiums, up to the amount owing hereunder by Debtor. Debtor directs all insurers to pay such proceeds directly to Lender and authorizes Lender to endorse Debtor's name to all remittances without the joinder of Debtor.

Page 1 of 5 of Loan and Security Agreement dated NOVEMBER 20, 2018 between CNI EXPRESS LLC (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1.14T 8/2018
Doc Request:
MRICINDENOINE 2366629

ORIGINAL FOR BMO HARRIS BANK

**EXHIBIT A**

DocuSign Envelope ID: 89231378-BD35-4106-9B6F-4908FF627189

THIS IS A COPY
This is a copy view of the Authoritative Copy held by the designated custodian

## IMPORTANT INFORMATION ABOUT ESTABLISHING A RELATIONSHIP WITH BANK

To help the United States Government fight terrorism and money laundering, Federal law requires us to obtain, verify, and record information that identifies each person or business that opens an account or establishes a relationship. What this means for you: when you open an account or establish a relationship, we will ask for your name, street address, date of birth, and identification number, such as a social security number or taxpayer identification number. For businesses, we will ask for the business name, street address and tax identification number. Federal law requires us to obtain this information. We may also ask to see your driver's license or other identifying documents that will allow us to identify you. We appreciate your cooperation.

## DELIVERY AND ACCEPTANCE OF EQUIPMENT
(Check Appropriate Box)

Debtor's obligations and liabilities to Lender are absolute and unconditional under all circumstances and regardless of any failure of operation or Debtor's loss of possession of any item of Equipment or the cessation or interruption of Debtor's business for any reason whatsoever.

☒ On **NOVEMBER 20, 2018**, the Equipment being purchased with the proceeds of this Agreement was delivered to Debtor with all installation and other work necessary for the proper use of the Equipment completed at a location agreed upon by Debtor; the Equipment was inspected by Debtor and found to be in satisfactory condition in all respects and delivery was unconditionally accepted by Debtor.

☐ The Equipment being purchased with the proceeds of this Agreement has not yet been delivered to or accepted by Debtor and, upon delivery, Debtor agrees to execute such delivery and acceptance certificate as Secured Party requires.

☐ All of the Equipment was acquired by Debtor prior to the date hereof and was previously delivered to and unconditionally accepted by Debtor.

Dated:   **NOVEMBER 20, 2018**

Lender:   BMO HARRIS BANK N.A.

By:   *Bradford, Toi*

Name:   Bradford, Toi

Title:   AUTHORIZED SIGNER

300 E. JOHN CARPENTER FREEWAY
(Street Address)

IRVING, TEXAS 75062-2712
(City, State and Zip Code)

Debtor(s) hereby acknowledge(s) receipt of an exact copy of this contract.

Debtor:   **CNI EXPRESS LLC**

By:

Name:   **FLINT EDWARDS**

Title:   **MEMBER**

State of Organization:   **FL**

Principal Residence/Chief Executive Office/Place of Business:
**1211 ATLANTIC CT**
(Street Address)
**KISSIMMEE, FL 34759**
(City, State and Zip Code)

Billing/Invoice Address:

**1211 ATLANTIC CT**
(Address)
**KISSIMMEE, OSCEOLA, FL 34759**
(City, County, State and Zip Code)

When not in use, the Equipment will be kept at:

**1211 ATLANTIC CT**
(Equipment Street)
**KISSIMMEE, OSCEOLA, FL 34759**
(Equipment City, County, State, and Zip)

Page 5 of 5 of Loan and Security Agreement dated NOVEMBER 20, 2018 between CNI EXPRESS LLC (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax
1:14T  8/2018
Doc Request
PRICINGENGINE 2166829

ORIGINAL FOR BMO HARRIS BANK

 BMO **Transportation Finance**

# LOAN AND SECURITY AGREEMENT

The undersigned debtor, meaning all debtors jointly and severally ("Debtor"), to secure the obligations set forth herein grants to the Lender named below (with its successors and assigns, "Lender") under the terms and provisions of this agreement (this "Agreement") a security interest in the following property (with all present and future attachments, accessions, accessories, replacement parts, repairs and additions or substitutions, "Equipment"):

| Year | Manufacturer | Model | Description | Serial Number |
|------|--------------|-------|-------------|---------------|
| 2020 | VANGUARD | 53' REEFER | 53' REEFER | 527SR5326LL018006 |
| 2020 | THERMO KING | C600 | C600 | 6001325579 |

## PAYMENT SCHEDULE

Debtor promises to pay Lender principal plus pre-computed interest and any administrative fee set forth below (the "Total Amount") of _$83,486.40_ in _60_ installments as follows:

(a) $1,391.44 on DECEMBER 1, 2020 and a like sum on the like date of each month thereafter until fully paid.

(b) In irregular installments as follows:

# of Payments    Payment Amount    Payment Date

provided, however, that the final installment shall be in the amount of the then remaining unpaid balance plus any and all other accrued and unpaid sums due hereunder.

The interest under this Agreement is pre-computed. The Total Amount is calculated based on interest accruing at an interest rate of _7.50%_ per annum based on a 360-day year of twelve 30-day months, plus the administrative fee, if any, spread over the life of the loan. The total cost of credit includes such accrued interest and the administrative fee of $300.00 equating to an annual percentage rate of _7.65%_ based on a 360-day year of twelve 30-day months. Late payments may affect the actual total amount payable due to payment of delinquency charges and/or increased accrued interest. If the Payment Schedule contains (i) a period of longer than a month before the first Payment Date (the excess number of days herein referred to as a "Stub Period") or (ii) any month or months in which a Payment Amount is either not due or is in an amount less than the accrued interest for such month (in either event, such period herein referred to as a "Skip Period"), then at the option of Lender, to the extent permitted by law, the unpaid and accrued interest for such Stub Period or Skip Period may be added to the unpaid principal amount hereunder and shall thereafter accrue interest at the interest rate set forth above.

DELINQUENCY: FOR EACH INSTALLMENT NOT PAID WHEN DUE, DEBTOR AGREES TO PAY LENDER A DELINQUENCY CHARGE CALCULATED ON THE AMOUNT OF SUCH INSTALLMENT AT THE RATE OF 6% OF SUCH INSTALLMENT IF NOT PROHIBITED BY LAW, OTHERWISE AT THE HIGHEST RATE THAT DEBTOR CAN LEGALLY OBLIGATE ITSELF TO PAY AND/OR LENDER CAN LEGALLY COLLECT.

## USE OF PROCEEDS

Lender is hereby irrevocably authorized and directed to disburse the proceeds of this Agreement as follows:

| Amount | Payee (Name and Address) |
|--------|--------------------------|
| $68,480.00 | TOTAL TRAILER CO LLC |
| | 2535 N BLVD |
| | IDAHO FALLS, ID 83401 |
| $240.80 | FLORIDA DEPARTMENT OF REVENUE |
| | 5050 W TENNESSEE STREET |
| | TALLAHASSEE, FL 32399 |

Disbursement may be made in Lender's name or in Debtor's name. Disbursement in accordance with the above instructions or any written supplement to these instructions will constitute payment and delivery to and receipt by Debtor of all such proceeds.

PAYMENT ADDRESS: All amounts payable under this Agreement are payable at Lender's address shown below or at such other address as Lender may specify from time to time in writing. All written communication concerning disputed amounts, including any check or other payment instrument that (i) indicates that the written payment constitutes "payment in full" or is tendered as full satisfaction of a disputed amount or (ii) is tendered with other conditions or limitations (collectively a "Disputed Payment") must be mailed or delivered to us at the address for billing inquiries shown on the invoice or statement and not to the payment address.

### 1.0    THE EQUIPMENT

1.1    Disclaimer. LENDER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY, OR FITNESS OF THE EQUIPMENT FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED. Debtor's obligations hereunder are absolute and unconditional notwithstanding the existence, location or condition of any item of Equipment or its suitability for use in Debtor's business.

1.2    Equipment Receipt and Use. Debtor warrants and agrees that: the proceeds of the loan and the Equipment will be used solely for business and commercial purposes; the Equipment is free from and will be kept free from all liens, claims, security interests and encumbrances other than that created hereby; Debtor will not, without Lender's prior written consent, sell, rent, lend, encumber, pledge, transfer, secrete or otherwise dispose of any of the Equipment, nor will Debtor permit any such act; the Equipment will be maintained in good operating condition, repair and appearance, and will be used and operated with care, only by qualified personnel in the regular course of Debtor's business; the Equipment shall remain personal property and not become part of any real property regardless of the manner of affixation; Lender may inspect the Equipment and all books and records relating to the Equipment or Debtor's performance under this Agreement at all reasonable times and from time to time; the Equipment will be kept at Debtor's place of business which is indicated immediately below Debtor's signature and will not be removed from said location without the prior written consent of Lender, except that an item of Equipment may be used away from said location in the regular course of Debtor's business provided that (a) such item is not removed from the United States (except for occasional use in Canada), and (b) if such item is not returned to said location within 30 days, Debtor will immediately upon Lender's request and each 30 days thereafter until the item is returned report the then current location thereof to Lender in writing.

1.3    Insurance. Debtor shall at all times bear all risk of loss of, damage to or destruction of the Equipment, and shall notify Lender if any of the Equipment is lost, damaged or destroyed. Debtor agrees to maintain insurance on the Equipment for the actual cash value thereof and for the life of this Agreement, covering all risks of physical loss or damage and such other risks as Lender may require, in form and amount and with insurers chosen by Debtor and satisfactory to Lender. Debtor agrees to deliver promptly to Lender certificates or, if requested, policies of insurance satisfactory to Lender, each with a standard long-form loss-payable endorsement naming Lender, its agent or such other party as Lender may from time to time instruct, and its successors and assigns, as loss-payee as their interests may appear. Each policy shall provide that Lender's interest therein will not be invalidated by the acts, omissions or neglect of anyone other than Lender, and shall provide that coverage may not be canceled or altered by the insurer except upon 30 days prior written notice to Lender. Lender's acceptance of policies in lesser

Page 1 of 5 of Loan and Security Agreement dated SEPTEMBER 28, 2020 between CNI EXPRESS LLC (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 – Fund off fav - ID-PPP
L-14T 8/2018
Doc Request
PRICINGENGINE 3787550

ORIGINAL FOR BMO HARRIS BANK



## IMPORTANT INFORMATION ABOUT ESTABLISHING A RELATIONSHIP WITH BANK

To help the United States Government fight terrorism and money laundering, Federal law requires us to obtain, verify, and record information that identifies each person or business that opens an account or establishes a relationship. What this means for you: when you open an account or establish a relationship, we will ask for your name, street address, date of birth, and identification number, such as a social security number or taxpayer identification number. For businesses, we will ask for the business name, street address and tax identification number. Federal law requires us to obtain this information. We may also ask to see your driver's license or other identifying documents that will allow us to identify you. We appreciate your cooperation.

## DELIVERY AND ACCEPTANCE OF EQUIPMENT

(Check Appropriate Box)

Debtor's obligations and liabilities to Lender am absolute and unconditional under all circumstances and regardless of any failure of operation or Debtor's loss of possession of any item of Equipment or the cessation or interruption of Debtor's business for any reason whatsoever.

☒ On **SEPTEMBER 28, 2020**, the Equipment being purchased with the proceeds of this Agreement was delivered to Debtor with all installation and other work necessary for the proper use of the Equipment completed at a location agreed upon by Debtor; the Equipment was inspected by Debtor and found to be in satisfactory condition in all respects and delivery was unconditionally accepted by Debtor.

☐ The Equipment being purchased with the proceeds of this Agreement has not yet been delivered to or accepted by Debtor and, upon delivery, Debtor agrees to execute such delivery and acceptance certificate as Secured Party requires.

☐ All of the Equipment was acquired by Debtor prior to the date hereof and was previously delivered to and unconditionally accepted by Debtor.

Dated: **SEPTEMBER 28, 2020**

Lender:  **BMO HARRIS BANK N.A.**

By: _____

Name: _____

Title:  **AUTHORIZED SIGNER**

**300 E. JOHN CARPENTER FREEWAY**
(Street Address)
**IRVING, TEXAS 75062-2712**
(City, State and Zip Code)

Debtor(s) hereby acknowledge(s) receipt of an exact copy of this contract.

Debtor:  **CNI EXPRESS LLC**

By: _____

Name:  **CARLYNE DESIR**

Title:  **MANAGING MEMBER**

State of Organization:  **FL**

Principal Residence/Chief Executive Office/Place of Business:
**1211 ATLANTIC CT**
(Street Address)
**KISSIMMEE, FL 34759**
(City, State and Zip Code)

Billing/Invoice Address:
**1211 Atlantic ct**
(Address)
**KISSimmee FL 34759**
(City, County, State and Zip Code)
When not in use, the Equipment will be kept at:

**1211 ATLANTIC CT**
(Equipment Street)
**KISSIMMEE, OSCEOLA, FL 34759**
(Equipment City, County, State and Zip)

Page 5 of 5 of Loan and Security Agreement dated SEPTEMBER 28, 2020 between CNI EXPRESS LLC (Debtor) and BMO HARRIS BANK N.A. (Lender).
621700 - Fund off fax - ID PPP
1.14T 8/2018
Doc Request
PRICINGENGINE 2787559

ORIGINAL FOR BMO HARRIS BANK

EXHIBIT B

ABS-15G

ABS-15G 1 d893564dabs15g.htm ABS-15G

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## FORM ABS-15G

### ASSET-BACKED SECURITIZER
### REPORT PURSUANT TO SECTION 15G OF
### THE SECURITIES EXCHANGE ACT OF 1934

Check the appropriate box to indicate the filing obligation which this form is intended to satisfy:

☒ **Rule 15Ga-1 under the Exchange Act (17 CFR 240.15Ga-1) for the reporting period January 1, 2024 to December 31, 2024**

Date of Report (Date of earliest event reported): January 30, 2025

# BMO Bank N.A.

(Exact name of securitizer as specified in its charter)

Commission File Number of securitizer: 025-05735

Central Index Key Number of securitizer: 0001526648

**Patrick Rosenthal (212) 702-1266**
Name and telephone number, including area code, of the person to contact in connection with this filing

Indicate by check mark whether the securitizer has no activity to report for the initial period pursuant to Rule 15Ga-1(c)(1)  ☐

Indicate by check mark whether the securitizer has no activity to report for the quarterly period pursuant to Rule 15Ga-1(c)(2)(i)  ☐

Indicate by check mark whether the securitizer has no activity to report for the annual period pursuant to Rule 15Ga-1(c)(2)(ii)  ☒

☐ **Rule 15Ga-2 under the Exchange Act (17 CFR 240.15Ga-2)**

Central Index Key Number of depositor: _____

(Exact name of issuing entity as specified in its charter)

Central Index Key Number of issuing entity: _____

Central Index Key Number of underwriter: _____

Name and telephone number, including area code, of the person to
contact in connection with this filing

March 15, 2023

Transportation Finance Equipment Trust 2019-1
c/o BMO Harris Bank N.A.
790 N. Water Street, 11th Floor
Milwaukee, WI 53202

Attention: Securitization Finance & Operations

Pursuant to Section 2.8 of the Servicing Agreement, dated as of October 16, 2019, as amended by Amendment No. 1 to Servicing Agreement dated as of October 23, 2020 (the "*Servicing Agreement*"), between TRANSPORTATION FINANCE EQUIPMENT TRUST 2019-1 (the "*Issuer*") and BMO Harris Bank N.A., as Servicer (the "*Servicer*"), the undersigned hereby certifies that:

(i)     I am a duly elected, qualified, and acting officer of the Servicer, with the title set forth under my name below, and in such capacity, I have full knowledge of the facts herein certified and am duly authorized to make these representations and covenants on behalf of the Servicer;

(ii)    a review of the activities of the Servicer from January 1, 2022 to December 31, 2022 and of its performance under the Servicing Agreement has been made under the supervision of the undersigned; and

(iii)   to the best knowledge of the undersigned, based on such review, the Servicer has fulfilled all of its obligations under the Servicing Agreement throughout such year.

Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to them in Section 1 of Annex A to the Indenture, dated October 16, 2019, as amended by Supplemental Indenture No. 1, dated as of June 17, 2020, and Supplemental Indenture No. 2, dated as of October 23, 2020, between the Issuer and U.S. Bank National Association, as Indenture Trustee.

BMO Harris Bank N.A.

By:

Name:

Title:   Senior Vice President and U.S. Treasurer

cc: U.S. Bank National Association, as Indenture Trustee

5/1/25, 7:02 AM EX-99.1

EX-99.1 2 d856288dex991.htm EX-99.1



# BMO Financial Group Reports Third Quarter 2024 Results

## REPORT TO SHAREHOLDERS

BMO's Third Quarter 2024 Report to Shareholders, including the unaudited interim consolidated financial statements for the period ended July 31, 2024 are available online at www.bmo.com/investorrelations and at www.sedarplus.ca.

### Financial Results Highlights

Third Quarter 2024 compared with Third Quarter 2023:

- Net income of $1,865 million, compared with $1,565 million; adjusted net income[1,2] of $1,981 million, compared with $2,148 million

- Reported earnings per share (EPS)[3] of $2.48, compared with $2.12; adjusted EPS[1,2,3] of $2.64, compared with $2.94

- Provision for credit losses (PCL) of $906 million, compared with $492 million

- Return on equity (ROE) of 10.0%, compared with 9.0%; adjusted ROE[1,2] of 10.6%, compared with 12.5%

- Common Equity Tier 1 (CET1) Ratio[4] of 13.0%, compared with 12.3%

Year-to-Date 2024 compared with Year-to-Date 2023:

- Net income of $5,023 million, compared with $2,727 million; adjusted net income[1,2] of $5,907 million, compared with $6,492 million

- Reported EPS[3] of $6.57, compared with $3.56; adjusted EPS[1,2,3] of $7.78, compared with $8.86

- PCL of $2,238 million, compared with $1,732 million on a reported basis and $1,027 million on an adjusted basis[1]

- ROE of 9.0%, compared with 5.1%; adjusted ROE[1,2] of 10.7%, compared with 12.7%.

Adjusted[1,3] results in the current quarter and the prior year excluded the following items:

- Acquisition and integration costs of $19 million ($25 million pre-tax) in the current quarter; $370 million ($497 million pre-tax) in the prior year.
- Amortization of acquisition-related intangible assets of $79 million ($107 million pre-tax) in the current quarter; $85 million ($115 million pre-tax) in the prior year.
- Impact of the U.S. Federal Deposit Insurance Corporation (FDIC) special assessment of $5 million ($6 million pre-tax) in the current quarter.
- Impact of a lawsuit associated with a predecessor bank, M&I Marshall and Ilsley Bank, of $13 million ($18 million pre-tax) in the current quarter; a net recovery of $3 million ($4 million pre-tax) in the prior year.
- A charge of $131 million ($160 million pre-tax) related to tax measures enacted by the Canadian government that amended the GST/HST definition for financial services in the prior year.

Toronto, August 27, 2024 – For the third quarter ended July 31, 2024, BMO Financial Group recorded net income of $1,865 million or $2.48 per share on a reported basis, and net income of $1,981 million or $2.64 per share on an adjusted basis.

"This quarter, BMO delivered strong pre-provision, pre-tax earnings and met our commitment to positive operating leverage for the quarter and year-to-date, reflecting good cost discipline and the sustained strength of our operating performance. While the cyclical increase in credit costs has resulted in loan loss provisions above our historical range, performance has been supported by operating momentum across our diversified businesses, including continued revenue growth in Canadian Personal and Commercial Banking and stronger client activity in our market-sensitive businesses. Across our U.S. markets, we're adding new customers and expanding capabilities, contributing to consistent pre-provision-pre-tax earnings in our U.S. Segment," said Darryl White, Chief Executive Officer, BMO Financial Group.

"With our strategic goals firmly in place, a strong balance sheet, robust capital and liquidity, we are well positioned to deliver sustainable returns to our shareholders. How we live our Purpose, to Boldly Grow the Good in business and life, continues to be recognized, including being named to Corporate Knights' ranking of Canada's Best 50 Corporate Citizens for the 23rd consecutive year," concluded Mr. White.

Concurrent with the release of results, BMO announced a fourth quarter 2024 dividend of $1.55 per common share, unchanged from the prior quarter and an increase of $0.08 or 5% from the prior year. The quarterly dividend of $1.55 per common share is equivalent to an annual dividend of $6.20 per common share.

**Caution**

The foregoing section contains forward-looking statements. Please refer to the Caution Regarding Forward-Looking Statements.

(1) Results and measures in this document are presented on a generally accepted accounting principles (GAAP) basis. They are also presented on an adjusted basis that excludes the impact of certain specified items from reported results. Adjusted results and ratios are non-GAAP and are detailed for all reported periods in the Non-GAAP and Other Financial Measures section. For details on the composition of non-GAAP amounts, measures and ratios, as well as supplementary financial measures, refer to the Glossary of Financial Terms.
(2) Effective the first quarter of 2024, the bank adopted IFRS 17, Insurance Contracts (IFRS 17), and retrospectively applied it to fiscal 2023 results and opening retained earnings as at November 1, 2022. For further information, refer to the Changes in Accounting Policies section.
(3) All EPS measures in this document refer to diluted EPS, unless specified otherwise.
(4) The CET1 Ratio is disclosed in accordance with the Capital Adequacy Requirements (CAR) Guideline, as set out by the Office of the Superintendent of Financial Institutions (OSFI), as applicable.

Note: All ratios and percentage changes in this document are based on unrounded numbers.

BMO Financial Group Third Quarter Report 2024 1

## Third Quarter 2024 Performance Review

Adjusted results and ratios in this section are on a non-GAAP basis. Refer to the Non-GAAP and Other Financial Measures section for further information on adjusting items. The order in which the impact on net income is discussed in this section follows the order of revenue, expenses and provision for credit losses, regardless of their relative impact.

### Canadian P&C
Reported net income was $914 million, an increase of $33 million or 4% from the prior year, and adjusted net income was $920 million, an increase of $31 million or 3%. Results reflected a 7% increase in revenue, driven by higher net interest income due to balance growth and higher margins, higher expenses and a higher provision for credit losses.

### U.S. P&C
Reported net income was $470 million, a decrease of $32 million or 6% from the prior year, and adjusted net income was $539 million, a decrease of $40 million or 7% from the prior year.

On a U.S. dollar basis, reported net income was $344 million, a decrease of $32 million or 9% from the prior year, and adjusted net income, which excludes amortization of acquisition-related intangible assets, was $395 million, a decrease of $39 million or 9%. Results reflected lower revenue driven by a decrease in non-interest revenue, lower expenses and a higher provision for credit losses.

### BMO Wealth Management
Reported net income was $362 million, a decrease of $34 million or 9% from the prior year, and adjusted net income was $364 million, a decrease of $33 million or 8%. Wealth and Asset Management reported net income was $300 million, an increase of $91 million or 44%, reflecting higher revenue due to growth in client assets, including stronger global markets, partially offset by lower net interest income, as well as lower expenses. Insurance net income was $62 million, a decrease of $125 million from the prior year, primarily due to changes in portfolio positioning during the transition to IFRS 17.

### BMO Capital Markets
Reported net income was $389 million, an increase of $94 million or 32% from the prior year, and adjusted net income was $394 million, an increase of $93 million or 31%. Results reflected higher revenue in both Global Markets and Investment and Corporate Banking driven by higher trading, underwriting and advisory, and corporate banking-related revenue, as well as lower expenses and a higher provision for credit losses.

### Corporate Services
Reported net loss was $270 million, compared with reported net loss of $509 million in the prior year, and adjusted net loss was $236 million, compared with adjusted net loss of $18 million. Reported net loss decreased, primarily due to lower acquisition and integration costs and the impact of tax measures in the prior year. Adjusted net loss increased due to lower revenue, partially offset by lower expenses.

### Capital
BMO's Common Equity Tier 1 Ratio was 13.0% as at July 31, 2024, a decrease from 13.1% at the end of the second quarter of 2024, with internal capital generation more than offset by higher source currency risk-weighted assets.

### Credit Quality
Total provision for credit losses was $906 million, compared with a provision of $492 million in the prior year. The provision for credit losses on impaired loans was $828 million, an increase of $495 million, due to higher provisions in U.S. P&C, Canadian P&C and BMO Capital Markets. The provision for credit losses on performing loans was $78 million, compared with a provision of $159 million in the prior year. The $78 million provision for credit losses on performing loans in the current quarter was primarily driven by portfolio credit migration.

Refer to the Critical Accounting Estimates and Judgments section of BMO's 2023 Annual Report and Note 4 of our audited annual consolidated financial statements for further information on the allowance for credit losses as at October 31, 2023.

### Regulatory Filings
BMO's continuous disclosure materials, including interim filings, annual Management's Discussion and Analysis and audited annual consolidated financial statements, Annual Information Form and Notice of Annual Meeting of Shareholders and Proxy Circular, are available on our website at www.bmo.com/investorrelations, on the Canadian Securities Administrators' website at www.sedarplus.ca, and on the EDGAR section of the U.S. Securities and Exchange Commission's website at www.sec.gov. Information contained in or otherwise accessible through our website (www.bmo.com), or any third-party websites mentioned herein, does not form part of this document.

---

**Bank of Montreal uses a unified branding approach that links all of the organization's member companies. Bank of Montreal, together with its subsidiaries, is known as BMO Financial Group. In this document, the names BMO and BMO Financial Group, as well as the words "bank", "we" and "our", mean Bank of Montreal, together with its subsidiaries.**

---

5/1/25, 7:02 AM                                    EX-99.1

## Enhanced Disclosure Task Force

Disclosures related to recommendations from the Financial Stability Board's Enhanced Disclosure Task Force (EDTF) to provide high-quality, transparent risk disclosures are detailed in the index below, as presented in the 2023 Annual Report, the Third Quarter 2024 Report to Shareholders (RTS), Supplemental Financial Information (SFI) or Supplemental Regulatory Capital Information (SRCI). Information on BMO's website, including information within the SFI or SRCI, is not and should not be considered incorporated by reference into our Third Quarter 2024 Report to Shareholders.

| Topic | | EDTF Disclosure | Page Number | | | |
|---|---|---|---|---|---|---|
| | | | 2023 Annual Report | Q3 2024 | | |
| | | | | RTS | SFI | SRCI |
| General | 1 | Risk-related information in each report, including an index for easy navigation | 78-118 | 4 | Index | Index |
| | 2 | Risk terminology, measures and key parameters | 82-118, 126-128 | 38 | - | - |
| | 3 | Top and emerging risks | 76-80 | 6,38 | - | - |
| | 4 | Plans to meet new key regulatory ratios once applicable rules are finalized | 72 | 19 | - | - |
| Risk Governance, Risk Management and Business Model | 5 | Risk management and governance framework, processes and key functions | 82-86 | - | - | - |
| | 6 | Risk culture, risk appetite and procedures to support the culture | 86 | - | - | - |
| | 7 | Risks that arise from business models and activities | 84-85 | - | - | - |
| | 8 | Stress testing within the risk governance and capital frameworks | 85-86 | - | - | - |
| Capital Adequacy and Risk-Weighted Assets (RWA) | 9 | Pillar 1 capital requirements | 70-73 | - | - | - |
| | 10 | Composition of capital components and reconciliation of the accounting balance sheet to the regulatory balance sheet. A main features template can be found at https://www.bmo.com/main/about-bmo/investor-relations/regulatory-disclosure | 73-74 | 19-20 | - | 5-6,14<br>6-7,16-17 |
| | 11 | Flow statement of movements in regulatory capital, including changes in Common Equity Tier 1 Capital, Additional Tier 1 Capital and Tier 2 Capital | - | - | - | II |
| | 12 | Capital management and strategic planning | 69,75-78 | - | - | - |
| | 13 | Risk-weighted assets (RWA) by operating group | 74 | - | - | 15 |
| | 14 | Analysis of capital requirements for each method used in calculating RWA | 73-74,87-90 | - | - | 15,21-48,<br>54-66,81-84 |
| | 15 | Tabulate credit risk in the banking book for Basel asset classes and major portfolios | - | - | - | 21-48,<br>50-66,83-84 |
| | 16 | Flow statement that reconciles movements in RWA by risk type | - | - | - | 49,80 |
| | 17 | Basel validation and back-testing process, including estimated and actual loss parameter information | 112 | - | - | 85 |
| Liquidity Funding | 18 | Management of liquidity needs, and liquidity reserve held to meet those needs | 100-106 | 42,45 | - | - |
| | 19 | Encumbered and unencumbered assets disclosed by balance sheet category | 102-103 | 43 | 36 | - |
| | 20 | Consolidated total assets, liabilities and off-balance sheet commitments by remaining contractual maturity | 107-108 | 47-48 | - | - |
| | 21 | Analysis of funding sources and funding strategy | 103-104 | 43-44 | - | - |
| Market Risk | 22 | Linkage of trading and non-trading market risk to the Consolidated Balance Sheet | 99 | 40 | - | - |
| | 23 | Significant trading and non-trading market risk factors | 90-99 | 40-41 | - | - |
| | 24 | Market risk model assumptions, validation procedures and back-testing | 95-99,112 | - | - | - |
| | 25 | Primary techniques for risk measurement and risk assessment, including risk of loss | 95-99 | 40-41 | - | - |
| Credit Risk | 26 | Analysis of credit risk profile, exposure and concentration | 87-94, 159-166 | 16,63-67 | 24-33 | 15-79 |
| | 27 | Policies to identify impaired loans and renegotiated loans | 159-161,166 | - | - | - |
| | 28 | Reconciliation of opening and closing balances of impaired loans and allowance for credit losses | 93,164 | 17,63-65 | - | - |
| | 29 | Counterparty credit risk arising from derivative transactions | 87-88,94, 178-179 | - | - | 54-71 |
| | 30 | Credit risk mitigation | 87-88,162, 176,209 | - | - | 20,50-51,67 |
| Other Risks | 31 | Discussion of other risks | 82-84, 109-118 | - | - | - |
| | 32 | Publicly known risk events involving material or potentially material loss events | 109-118 | - | - | - |

BMO Financial Group Third Quarter Report 2024 3

EX-99.1

# Management's Discussion and Analysis

Management's Discussion and Analysis (MD&A) commentary is as at August 27, 2024. The material that precedes this section comprises part of this MD&A. The MD&A should be read in conjunction with the unaudited interim consolidated financial statements for the period ended July 31, 2024, as well as the 2023 annual MD&A and the audited annual consolidated financial statements for the year ended October 31, 2023, contained in BMO's 2023 Annual Report. Unless otherwise indicated, all amounts are stated in Canadian dollars and have been derived from the unaudited interim consolidated financial statements prepared in accordance with International Financial Reporting Standards (IFRS), as issued by the International Accounting Standards Board. We also comply with interpretations of IFRS by our regulator, the Office of the Superintendent of Financial Institutions (OSFI). References to generally accepted accounting principles (GAAP) mean IFRS Accounting Standards.

BMO's 2023 Annual Report includes a comprehensive discussion of its businesses, strategies and objectives, and can be accessed on our website at www.bmo.com/investorrelations. Readers are also encouraged to visit the site to view other quarterly financial information.

## Table of Contents

| | |
|---|---|
| 5 | Caution Regarding Forward-Looking Statements |
| 6 | Economic Developments and Outlook |
| 7 | Financial Highlights |
| 8 | Non-GAAP and Other Financial Measures |
| 13 | Foreign Exchange |
| 13 | Net Income |
| 14 | Revenue |
| 16 | Total Provision for Credit Losses |
| 17 | Impaired Loans |
| 17 | Non-Interest Expense |
| 17 | Provision for Income Taxes |
| 18 | Balance Sheet |
| 19 | Capital Management |
| 22 | Review of Operating Groups' Performance |
| 23 | Personal and Commercial Banking (P&C) |
| 24 | Canadian Personal and Commercial Banking (Canadian P&C) |
| 26 | U.S. Personal and Commercial Banking (U.S. P&C) |
| 28 | BMO Wealth Management |
| 30 | BMO Capital Markets |
| 32 | Corporate Services |
| 34 | Summary Quarterly Earnings Trends |
| 35 | Transactions with Related Parties |
| 35 | Off-Balance Sheet Arrangements |

| | |
|---|---|
| 36 | Accounting Policies and Critical Accounting Estimates and Judgments |
| 36 | Allowance for Credit Losses |
| 36 | Changes in Accounting Policies |
| 37 | Future Changes in Accounting Policies |
| 37 | Other Regulatory Developments |
| 38 | Risk Management |
| 38 | Top and Emerging Risks That May Affect Future Results |
| 38 | Real Estate Secured Lending |
| 39 | International Exposures |
| 40 | Market Risk |
| 41 | Insurance Risk |
| 42 | Liquidity and Funding Risk |
| 44 | Credit Ratings |
| 49 | Glossary of Financial Terms |
| 57 | Interim Consolidated Financial Statements |
| 52 | Consolidated Statement of Income |
| 53 | Consolidated Statement of Comprehensive Income |
| 54 | Consolidated Balance Sheet |
| 55 | Consolidated Statement of Changes in Equity |
| 56 | Consolidated Statement of Cash Flows |
| 57 | Notes to Interim Consolidated Financial Statements |
| 80 | Investor and Media Information |

Bank of Montreal's management, under the supervision of the Chief Executive Officer and the Chief Financial Officer, has evaluated the effectiveness, as at July 31, 2024, of Bank of Montreal's disclosure controls and procedures (as defined in the rules of the U.S. Securities and Exchange Commission and the Canadian Securities Administrators) and has concluded that such disclosure controls and procedures are effective.

There were no changes in our internal control over financial reporting during the quarter ended July 31, 2024, which materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

Because of inherent limitations, disclosure controls and procedures and internal control over financial reporting can provide only reasonable assurance and may not prevent or detect misstatements.

As in prior quarters, Bank of Montreal's Audit and Conduct Review Committee reviewed this document and Bank of Montreal's Board of Directors approved the document prior to its release.

4 BMO Financial Group Third Quarter Report 2024

# EXHIBIT C

Filing # 171548166 E-Filed 04/21/2023 03:18:52 PM

## IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
## IN AND FOR OSCEOLA COUNTY, FLORIDA

CASE NO.:

BMO HARRIS BANK N.A.,

      Plaintiff,

vs.

CNI EXPRESS LLC, CARLYNE
DESIR, and FLINT EDWARDS,

      Defendants.

_____/

### VERIFIED COMPLAINT

Plaintiff, BMO HARRIS BANK N.A. ("Plaintiff"), by and through its undersigned attorneys,

sues Defendants, CNI EXPRESS LLC ("Borrower"). CARLYNE DESIR ("Desir"), and FLINT

EDWARDS ("Edwards"), and alleges:

### JURISDICTION, PARTIES AND VENUE

1.    Plaintiff is a national banking association with its principal office at 320 S. Canal,

Chicago IL 60606.

2.    At all times relevant, Borrower was a Florida corporation with its principal place of

business located in Pinellas County, Florida that was authorized to conduct and conducting business

in Pinellas County, Florida.

3.    Upon information and belief, Desir is a resident of Osceola County, Florida.

4.    Upon information and belief, Edwards is a resident of Osceola County, Florida.

5.    Venue is proper in Osceola County, Florida pursuant to the venue clause in the Loan

Agreements (as defined below) and, independently, pursuant to Florida Statute § 47.021, because

Desir and Edwards reside in Osceola County, Florida.

## GENERAL ALLEGATIONS

### First Loan Agreement

6.     On or about November 20, 2018, Borrower executed and delivered to Plaintiff a Loan and Security Agreement (the "First Loan Agreement") for the Borrower's purchase of a 2019 Volvo VNL-Series Tractor (Vehicle Identification Number: 4V4NC9EJ6KN203312) ("First Loan Tractor"). A genuine, authentic, true, and correct copy of the First Loan Agreement is attached hereto and incorporated herein as Exhibit "A." (All loan and account numbers in Exhibit "A" and all other Exhibits attached hereto have been redacted for purposes of confidentiality.)

7.     By executing the First Loan Agreement, Borrower provided Plaintiff with a security interest in the First Loan Tractor pursuant to the terms of the First Loan Agreement.

8.     Plaintiff perfected its security interest in the First Loan Tractor by recording a lien on the Certificate of Title for the First Loan Tractor with the State of Ohio Bureau of Motor Vehicles. A genuine, authentic, true, and correct copy of the Certificate of Title for the First Loan Tractor, which confirms that Plaintiff holds a first lien on the First Loan Tractor, is attached hereto and incorporated herein as Exhibit "B."

9.     On or about November 20, 2018, Edwards executed and delivered to Plaintiff a Continuing Guaranty ("First Edwards Guaranty") of all present and future debts and obligations of Borrower to Plaintiff. A genuine, authentic, true, and correct copy of the First Edwards Guaranty is attached hereto and incorporated herein as Exhibit "C."

### Second Loan Agreement

10.     On or about September 28, 2020, Borrower executed and delivered to Plaintiff a Loan and Security Agreement (the "Second Loan Agreement") for the Borrower's purchase of a 2020

Vanguard 53' Reefer Trailer (Vehicle Identification Number: 527SR5326LL018006) together with a 2020 Thermo King C600 (Serial Number: 6001325579) (collectively, the "Second Loan Trailer"). A genuine, authentic, true, and correct copy of the Second Loan Agreement is attached hereto and incorporated herein as Exhibit "D."

11.   By executing the Second Loan Agreement, Borrower provided Plaintiff with a security interest in the Second Loan Trailer pursuant to the terms of the Second Loan Agreement.

12.   Plaintiff perfected its security interest in the Second Loan Trailer by recording a lien on the Certificate of Title for the Second Loan Trailer with the State of Maine Bureau of Motor Vehicles. A genuine, authentic, true, and correct copy of the Certificate of Title for the Second Loan Trailer, which confirms that Plaintiff holds a first lien on the Second Loan Trailer, is attached hereto and incorporated herein as Exhibit "E."

13.   On or about September 28, 2020, Desir executed and delivered to Plaintiff a Continuing Guaranty ("Desir Guaranty") of all present and future debts and obligations of Borrower to Plaintiff. A genuine, authentic, true, and correct copy of the Desir Guaranty is attached hereto and incorporated herein as Exhibit "F." Given the copy quality of the signed Desir Guaranty, a genuine, authentic, true, and correct copy of the Desir Guaranty, which is unsigned, is attached hereto and incorporated herein as Exhibit "G."

**Third Loan Agreement**

14.   On or about October 2, 2020, Borrower executed and delivered to Plaintiff a Loan and Security Agreement (the "Third Loan Agreement") for the Borrower's purchase of a 2018 Freightliner Cascadia-Series Tractor (VIN Number 3AKJHHDRXJSJL1082) ("Third Loan Tractor"). A genuine, authentic, true, and correct copy of the Third Loan Agreement is attached hereto and incorporated herein as Exhibit "H." Given the copy quality of the signed Third Loan Agreement, a

[13829-79/10241907/1]                    3

genuine, authentic, true, and correct copy of the Third Loan Agreement, which is unsigned, is attached hereto and incorporated herein as Exhibit "I."

15.    By executing the Third Loan Agreement, Borrower provided Plaintiff with a security interest in the Third Loan Tractor pursuant to the terms of the Third Loan Agreement.

16.    Plaintiff perfected its security interest in the Third Loan Tractor by recording a lien on the Certificate of Title for the Third Loan Tractor with the Florida Department of Highway Safety and Motor Vehicles. A genuine, authentic, true, and correct copy of the Certificate of Title for the Third Loan Tractor, which confirms that Plaintiff holds a first lien on the Third Loan Tractor, is attached hereto and incorporated herein as Exhibit "J."

17.    On or about October 2, 2020, Edwards executed and delivered to Plaintiff a Continuing Guaranty ("Second Edwards Guaranty") of all present and future debts and obligations of Borrower to Plaintiff. A genuine, authentic, true, and correct copy of the Second Edwards Guaranty is attached hereto and incorporated herein as Exhibit "K." Given the copy quality of the Second Edwards Guaranty, a genuine, authentic, true, and correct copy of the Second Edwards Guaranty, which is unsigned, is attached hereto and incorporated herein as Exhibit "L."

## Defaults on the Loan Agreements

18.    Plaintiff is the owner and holder of the First Loan Agreement, Second Loan Agreement, and Third Loan Agreement (hereinafter referred to collectively as the "Loan Agreements"), together with the First Edwards Guaranty and the Second Edwards Guaranty (hereinafter referred to collectively as the "Edwards Guaranty") and the Desir Guaranty. (The First Loan Tractor, Second Loan Trailer and Third Loan Tractor are hereinafter referred to collectively as the "Collateral.")

19.     The First Loan Agreement is in default pursuant to Borrower's failure to pay Plaintiff the required installment payment due March 5, 2023 and all subsequent installment payments due thereafter.

20.     The Second Loan Agreement is in default pursuant to Borrower's failure to pay Plaintiff the required installment payment due March 1, 2023 and all subsequent installment payments due thereafter.

21.     The Third Loan Agreement is in default pursuant to Borrower's failure to pay Plaintiff the required installment payment due March 2, 2023 and all subsequent installment payments due thereafter.

22.     The Loan Agreements are also in default due to the cross-default provision in Section 5.1(b) of each of the Loan Agreements, which provides that a default on any one of the Loan Agreements constitutes a default on all of the Loan Agreements.

23.     On March 21, 2023, pursuant to Borrower's defaults on the Loan Agreements, Plaintiff elected to accelerate the balance due on the Loan Agreements and, pursuant to Section 5.3 of the Loan Agreements, to charge interest at the default interest rate of 18.00% per annum.

24.     On or about March 23, 2023, Plaintiff provided Borrower a with a Notice of Default and Acceleration which advised Borrower that Borrower defaulted on the Loan Agreements, that Plaintiff elected to accelerate the balance due on the Loan Agreements, that Plaintiff may be seeking to repossess the Collateral, and which demanded that Borrower surrender the Collateral to Plaintiff. A genuine, authentic, true and correct copy of the Plaintiff's Notice of Default and Acceleration sent to Borrower is attached hereto and incorporated herein as Exhibit "M."

25.     Despite receiving the Notice of Default and Acceleration, Borrower failed to pay Plaintiff the accelerated balance due on the Loan Agreements and failed to surrender the Collateral to

Plaintiff.

26.     On or about April 3, 2023, subsequent to Plaintiff's acceleration of the balances due

on the Loan Agreements due to Borrower's defaults, Plaintiff received partial payments from

Borrower towards the balances due on the Second Loan Agreement and the Third Loan Agreement in

the amount of $1,391.44 and $1,965.85, respectively.  Plaintiff has applied to these partial payments

to the balances due on the Second Loan Agreement and Third Loan Agreement; however, these

partial payments were insufficient to cure the Borrower's defaults on the Second Loan Agreement

and the Third Loan Agreement or to satisfy the accelerated balances due on either the Second Loan

Agreement or the Third Loan Agreement.

27.     As of April 18, 2023, Plaintiff is due the following on the Loan Agreements:

| FIRST LOAN AGREEMENT | |
|---|---|
| Principal balance | $35,486.76 |
| Interest | $970.97 |
| Late and Other Fees | $422.74 |
| SUBTOTAL FIRST LOAN AGREEMENT | $36,880.47 |
| **SECOND LOAN AGREEMENT** | |
| Principal balance | $41,292.99 |
| Interest | $991.28 |
| Late and Other Fees | $94.57 |
| LESS: Payment Received 4/3/23 | -$1,391.44 |
| SUBTOTAL SECOND LOAN AGREEMENT | $40,987.40 |
| **THIRD LOAN AGREEMENT** | |
| Principal balance | $51,498.50 |
| Interest | $1,415.27 |
| Late and Other Fees | $234.84 |
| LESS: Payment Received 4/3/23 | -$1,965.85 |
| SUBTOTAL THIRD LOAN AGREEMENT | $51,182.76 |
| **GRAND TOTAL** | **$129,050.63** |

Plus interest accruing after April 18, 2023 at $17.74 per diem on the First Loan Agreement, $20.33

per diem on the Second Loan Agreement, and $25.39 per diem on the Third Loan Agreement,

(assuming no change in the underlying interest rates), and all costs associated with Borrower's defaults and with collection, including reasonable attorneys' fees and costs.

28.     Attached hereto as Composite Exhibit "N" are the Black Book Valuation Reports for the same type of assets as the Collateral that are the subject of this Complaint. According to the Valuation Reports, the estimated average wholesale value of the Collateral is as follows:

| First Loan Tractor | 2019 Volvo VNL-Series tractor | $74,825.00 |
|---|---|---|
| Second Loan Trailer | 2020 Vanguard 53' Reefer trailer | $66,250.00 |
| Third Loan Tractor | 2018 Freightliner Cascadia-Series tractor | $48,650.00 |
| **TOTAL ESTIMATED WHOLESALE VALUE** | | **$189,725.00** |

29.     All conditions precedent to the filing of this lawsuit have been performed or have occurred.

## COUNT I – BREACH OF LOAN AGREEMENTS AGAINST DEFENDANT, CNI EXPRESS LLC

30.     This is an action against Borrower for damages that exceed $50,000.00 exclusive of costs, interest and attorneys' fees; therefore, jurisdiction is proper in this Court.

31.     Plaintiff realleges and restates Paragraphs 1-2, 5-8, 10-12, 14-16, and 18-29 above, as though fully set forth herein.

32.     Plaintiff has been damaged by Borrower's failure to pay Plaintiff the accelerated balance due on the Loan Agreements.

33.     Plaintiff has retained the undersigned Law Firm and is obligated to pay its attorneys a reasonable fee for their services in this action. Borrower is liable to Plaintiff for those attorneys' fees pursuant to Section 5.2 of the Loan Agreements.

WHEREFORE, Plaintiff, BMO HARRIS BANK N.A., demands judgment for damages, interest, costs, and attorneys' fees against the Defendant, CNI EXPRESS LLC.

## COUNT II – REPLEVIN AGAINST DEFENDANT, CNI EXPRESS LLC

34.    This is an action against Borrower pursuant to Chapter 78 and 679, Florida Statutes, to recover possession of personal property located in Osceola County, Florida, the value of which exceeds $50,000.00; therefore, jurisdiction is proper in this Court.

35.    Plaintiff realleges and restates Paragraphs 1-2, 5-8, 10-12, 14-16, and 18-29 above, as though fully set forth herein.

36.    Section 5.2 of each of the Loan Agreements provides that upon Borrower's default, Plaintiff "may, at its option, with or without notice to [Borrower]. . . (iv) …exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require [Borrower] to assemble [the Collateral] and deliver [the Collateral] to [Plaintiff] at a place to be designated by [Plaintiff] and to enter any premises where the [Collateral] may be without judicial process and take possession thereof."

37.    Plaintiff requests that the Court enter a pre-judgment Writ of Replevin in Plaintiff's favor for the recovery of the Collateral due to Borrower's default on the Loan Agreements.

38.    The first independent justification for the entry of a pre-judgment Writ of Replevin in Plaintiff's favor for the Collateral is that Borrower has failed to make the payments to Plaintiff as required by the Loan Agreements, which entitles Plaintiff to immediate possession of the Collateral pursuant to the terms of the Loan Agreements.

39.    The second independent justification for the entry of a pre-judgment Writ of Replevin in Plaintiff's favor for the Collateral is that Borrower failed to comply with Plaintiff's demand for immediate surrender of the Collateral after default. The Notice of Default and Acceleration (attached as Exhibit "M") advised Borrower that Plaintiff may be seeking to repossess the Collateral. The

Collateral is movable and subject to concealment and total loss or destruction. Borrower's defaults on the Loan Agreements and failure to cure its defaults on the Loan Agreements after receiving the Notice of Default and Acceleration suggests that Borrower is engaging or, or is about to engage in, conduct that may place the Collateral in danger of destruction, concealment, waste, removal from this State or from the jurisdiction of this Court, or transfer to an innocent purchaser during the pendency of the Action.

40.     As a result of Borrower's default on the Loan Agreements, and pursuant to the terms thereof, Plaintiff is lawfully entitled to the entry of a pre-judgment Writ of Replevin and possession of the Collateral.

41.     Borrower has wrongfully and unlawfully detained the Collateral from Plaintiff in violation of the terms of the Loan Agreements for the purpose of prohibiting Plaintiff from enforcing Plaintiff's right to retake possession of the Collateral under the Loan Agreements.

42.     The Collateral has not been taken for any tax, assessment of fine levied under any law of this State, nor have they been seized under any execution or attachment against the goods and chattels of Plaintiff liable to execution.

43.     Plaintiff has retained the undersigned Law Firm and is obligated to pay its attorneys a reasonable fee for their services in this Action. Borrower is liable to Plaintiff for those attorneys' fees pursuant to Section 5.2 of the Loan Agreements.

WHEREFORE, Plaintiff, BMO HARRIS BANK N.A., demands the following relief against Defendant, CNI EXPRESS LLC:

A.     The entry of an order, ex-parte, directing the Clerk of the Court to issue a pre-judgment Writ of Replevin with respect to the Collateral;

B.     A final judgment of replevin for the Collateral;

C.   An award of Plaintiff's costs and reasonable attorney fees; and

D.   Such other relief as this Court deems just.

## COUNT III – BREACH OF GUARANTY AGAINST DEFENDANT, FLINT EDWARDS

44.   This is an action for damages against Edwards that exceed $50,000.00, exclusive of costs, interest, and attorneys' fees; therefore, jurisdiction is proper in this Court.

45.   Plaintiff realleges and restates Paragraphs 1-2, 4-12, and 14-29 above, as though fully set forth herein.

46.   The Edwards Guaranty provides that Edwards is obligated to pay and discharge all of Borrower's present and future liabilities, obligations, and indebtedness to Plaintiff. As such, Edwards is obligated to pay Plaintiff the balance due on all of the Loan Agreements.

47.   At no point after execution of the Edwards Guaranty was the Edwards Guaranty terminated or released.

48.   On or about March 23, 2023, Plaintiff provided Edwards with a Notice of Default Respecting Guaranty ("Edwards Notice"), which advised Edwards that Borrower defaulted on the Loan Agreements, that Plaintiff elected to accelerate the balance due on the Loan Agreements, and that demanded payment of the balance due.  A genuine, authentic, true, and correct copy of the Edwards Notice sent to Edwards is attached hereto and incorporated herein as Exhibit "O."

49.   Despite receiving the Edwards Notice, Edwards failed to pay Plaintiff the accelerated balance due on the Loan Agreements.

50.   Edwards has failed to pay to Plaintiff the amounts due on the Loan Agreements after Borrower defaulted on the Loan Agreements in violation of the Edwards Guaranty.

51.     Plaintiff has been damaged by Edwards's failure to pay Plaintiff the amounts due on the Loan Agreements after Borrower failed to pay the amounts due thereunder to Plaintiff and for Edwards's breach of the Edwards Guaranty.

52.     Plaintiff has retained the undersigned Law Firm and is obligated to pay its attorneys a reasonable fee for their services in this Action. Edwards is liable to Plaintiff for its attorneys' fees and costs pursuant to the terms of the Edwards Guaranty.

WHEREFORE, Plaintiff, BMO HARRIS BANK N.A., demands judgment for damages, interests, costs, and reasonable attorneys' fees against Defendant, FLINT EDWARDS.

### COUNT IV – BREACH OF GUARANTY AGAINST DEFENDANT, CARLYNE DESIR

53.     This is an action for damages against Desir that exceed $50,000.00, exclusive of costs, interest, and attorneys' fees; therefore, jurisdiction is proper in this Court.

54.     Plaintiff realleges and restates Paragraphs 1-3, 5-8, 10-16, and 18-29 above, as though fully set forth herein.

55.     The Desir Guaranty provides that Desir is obligated to pay and discharge all of Borrower's present and future liabilities, obligations, and indebtedness to Plaintiff. As such, Desir is obligated to pay Plaintiff the balance due on all of the Loan Agreements.

56.     At no point after execution of the Desir Guaranty was the Desir Guaranty terminated or released.

57.     On or about March 23, 2023, Plaintiff provided Desir with a Notice of Default Respecting Guaranty ("Desir Notice"), which advised Desir that Borrower defaulted on the Loan Agreements, that Plaintiff elected to accelerate the balance due on the Loan Agreements, and that

demanded payment of the balance due. A genuine, authentic, true, and correct copy of the Desir Notice sent to Desir is attached hereto and incorporated herein as Exhibit "P."

58.     Despite receiving the Desir Notice, Desir failed to pay Plaintiff the accelerated balance due on the Loan Agreements.

59.     Desir has failed to pay to Plaintiff the amounts due on the Loan Agreements after Borrower defaulted on the Loan Agreements in violation of the Desir Guaranty.

60.     Plaintiff has been damaged by Desir's failure to pay Plaintiff the amounts due on the Loan Agreements after Borrower failed to pay the amounts due thereunder to Plaintiff and by Desir's breach of the Desir Guaranty.

61.     Plaintiff has retained the undersigned Law Firm and is obligated to pay its attorneys a reasonable fee for their services in this Action. Desir is liable to Plaintiff for its attorneys' fees and costs pursuant to the terms of the Desir Guaranty.

WHEREFORE, Plaintiff, BMO HARRIS BANK N.A., demands judgment for damages, interests, costs, and reasonable attorneys' fees against Defendant, CARLYNE DESIR.

Dated: April 21st, 2023

/s/ Bradley J. Anderson
_____
Bradley J. Anderson, Esquire
Florida Bar No.: 00105695
banderson@zkslawfirm.com
jwenhold@zkslawfirm.com
service@zkslawfirm.com
ZIMMERMAN, KISER & SUTCLIFFE, P.A.
315 E. Robinson St., Suite 600 (32801)
P.O. Box 3000
Orlando, FL 32802
Telephone: (407) 425-7010
Facsimile: (407) 425-2747
Counsel for Plaintiff

BJA/jbc

[13829-79/10241907/1]          12

# EXHIBIT D



# *Modern Money Mechanics*

**A Workbook on Bank Reserves and Deposit Expansion**

Federal Reserve Bank of Chicago

# Deposit Expansion

| **1** | When the Federal Reserve Bank purchases government securities, bank reserves increase. This happens because the seller of the securities receives payment through a credit to a designated deposit account at a bank (Bank A) which the Federal Reserve effects by crediting the reserve account of Bank A. |

| FEDERAL RESERVE BANK | | | | BANK A | |
|---|---|---|---|---|---|
| **Assets** | | **Liabilities** | **Assets** | | **Liabilities** |
| U.S. government securities | + 10,000 | Reserve accounts: Bank A    + 10,000 ◄────► | Reserves with F.R. Banks | + 10,000 | Customer deposit    + 10,000 |

*The customer deposit at Bank A likely will be transferred, in part, to other banks and quickly loses its identity amid the huge interbank flow of deposits.*

| **2** | As a result, all banks taken together now have "excess" reserves on which deposit expansion can take place. |

| Total reserves gained from new deposits ...................... | 10,000 |
|---|---|
| less: Required against new deposits (at 10 percent) ...................................... | 1,000 |
| equals: Excess reserves .................................................. | 9,000 |

---

### Expansion—Stage 1

| **3** | Expansion takes place only if the banks that hold these excess reserves (Stage 1 banks) increase their loans or investments. Loans are made by crediting the borrower's deposit account, i.e., by creating additional deposit money. |

| STAGE 1 BANKS | | |
|---|---|---|
| **Assets** | | **Liabilities** |
| Loans | + 9,000 | Borrower deposits    + 9,000 |

**38** When a Foreign Central Bank makes a dollar-denominated payment from its account at the Federal Reserve, the recipient deposits the funds in a U.S. bank. As the payment order clears, U.S. bank reserves rise.

| FEDERAL RESERVE BANK | | U.S. BANK | | FOREIGN CENTRAL BANK | |
|---|---|---|---|---|---|
| Assets | Liabilities | Assets | Liabilities | Assets | Liabilities |
| | Reserves: U.S. bank + 100 ◄► | Reserves with F.R. Banks + 100 | Deposits + 100 | Deposits at F.R. Banks - 100 | Accounts payable - 100 |
| | Foreign deposits - 100 | | | | |

**39** If a decline in its deposits at the Federal Reserve lowers the balance below desired levels, the Foreign Central Bank will request that the Federal Reserve sell U.S. government securities for it. If the sell order is executed in the market, reserves of U.S. banks will fall by the same amount as reserves were increased in (38).

| FEDERAL RESERVE BANK | | U.S. BANK | | FOREIGN CENTRAL BANK | |
|---|---|---|---|---|---|
| Assets | Liabilities | Assets | Liabilities | Assets | Liabilities |
| | Reserves: U.S. bank - 100 ◄► | Reserves with F.R. Banks - 100 | Deposits of securities buyer - 100 | Deposits at F.R. Banks + 100 | |
| | Foreign deposits + 100 | | | U.S. govt. securities - 100 | |

**40** If the sell order is executed with the Federal Reserve's account, however, the increase in reserves from (38) will remain in place. The Federal Reserve might choose to execute the foreign customer's sell order with the System's account if an increase in reserves is desired for domestic policy reasons.

| FEDERAL RESERVE BANK | | U.S. BANK | | FOREIGN CENTRAL BANK | |
|---|---|---|---|---|---|
| Assets | Liabilities | Assets | Liabilities | Assets | Liabilities |
| U.S. govt. securities + 100 | Foreign deposits + 100 | | NO CHANGE | Deposits at F.R. Banks + 100 | |
| | | | | U.S. govt. securities - 100 | |

**41** When a Foreign Central Bank draws on a "swap" line, it receives a credit to its dollar deposits at the Federal Reserve in exchange for a foreign currency deposit credited to the Federal Reserve's account. Reserves of U.S. banks are not affected by the swap drawing transaction, but will increase as the Foreign Central Bank uses the funds as in (38).

| FEDERAL RESERVE BANK | | U.S. BANK | | FOREIGN CENTRAL BANK | |
|---|---|---|---|---|---|
| Assets | Liabilities | Assets | Liabilities | Assets | Liabilities |
| Deposits at Foreign Central Bank + 100 | Foreign deposits + 100 | | NO CHANGE | Deposits at F.R. Banks + 100 | Deposits of F.R. Banks + 100 |

# EXHIBIT E

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE
# FINANCING STATEMENT FORM

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
CD LEGACY TRUST; 4073197574

B. Email CDLEGACYTRUST@GMAIL.COM

C. SEND ACKNOWLEDGEMENT TO:
Name
Address
Address
City/State/Zip

Florida Secured Transaction Registry

# FILED

2025 Mar 10 03:14 PM

********* 20250059760X *********

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME **(1a OR 1b)** - Do Not Abbreviate or Combine Names

| 1.a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CNI EXPRESS LLC | | | | |
| 1.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1.c MAILING ADDRESS Line One | This space not available. | | | |
| 12935 WILLOW GROVE DR. | | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | RIVERVIEW | FL. | 33579 | USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME **(2a OR 2b)** - Do Not Abbreviate or Combine Names

| 2.a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| 2.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| EDWARDS | FLINT | B | | |
| 2.c MAILING ADDRESS Line One | This space not available. | | | |
| 12935 WILLOW GROVE DR. | | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | RIVERVIEW | FL | 33579 | USA |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY **(3a OR 3b)**

| 3.a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CD LEGACY TRUST REVOCABLE LIVING TRUST | | | | |
| 3.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3.c MAILING ADDRESS Line One | This space not available. | | | |
| 11232 BOYETTE RD | | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |
| | RIVERVIEW | FL | 33579 | USA |

**4.** This **FINANCING STATEMENT** covers the following collateral:

ALL TANGIBLE AND INTANGIBLE PROPERTY OF THE DEBTORS (CNI EXPRESS LLC, FLINT EDWARDS AND CARLYNE DESIR), INCLUDING BUT NOT LIMITED TO REAL ESTATE, TITLES, BUILDINGS, LANDS, STRUCTURES, FIXTURES, CARS, VEHICLES, MACHINERY, EQUIPMENTS, INVENTORYS, ACCOUNTS, SECURITY INSTRUMENTS, PROMISSORY NOTES, CONTRACT RIGHTS, CHATTEL PAPER, INSTRUMENTS, INVESTMENT PROPERTY, DOCUMENTS, DEPOSIT ACCOUNTS, COMMERCIAL TORT CLAIMS, GENERAL INTANGIBLES, AND ALL OTHER PERSONAL PROPERTY OF THE DEBTOR, BOTH NOW OWNED AND HEREAFTER ACQUIRED OR ARISING, WHEREVER LOCATED. THIS INCLUDES ALL TITLES, DEEDS, STOCKS, BONDS, NOTES, PROCEEDS, MONEY, CHECKS, FUNDS, DIVIDENDS, INTEREST, SECURITIES, CHATTEL PAPERS, ACCOUNTS, ASSETS, CREDITS, CERTIFICATES, TRUSTS, AND ANY ENJOYMENTS OF THE ESTATE OF CNI EXPRESS LLC, FLINT EDWARDS AKA FLINT B EDWARDS, AND CARLYNE DESIR, WHETHER REGISTERED OR UNREGISTERED, INCLUDING INTELLECTUAL PROPERTY RIGHTS, TRADEMARKS, COPYRIGHTS, PATENTS, AND ALL RELATED RIGHTS AND GOODWILL. THE TOTAL

| 5. ALTERNATE DESIGNATION (if applicable) | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR ✔ | BAILEE/BAILOR |
|---|---|---|---|
| | AG LIEN | NON-UCC FILING | SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**
CAN NOT ACCESS ASSETS UNTIL LOAN IS PAID IN FULL.

STANDARD FORM - FORM UCC-1 (REV.05/2013)          Filing Office Copy          Approved by the Secretary of State, State of Florida

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE
## FINANCING STATEMENT FORM – ADDITIONAL PARTY

**8.  NAME OF FIRST DEBTOR (1aOR 1b) ON RELATED FINANCING STATEMENT**

| 8a.  ORGANIZATION'S NAME |
|---|
| CNI EXPRESS LLC |

| 8b.  INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**9.  MISCELLANEOUS:**

**10. ADDITIONAL DEBTOR'S  EXACT FULL LEGAL NAME** - INSERT ONLY  ONE DEBTOR NAME  (10a OR 10b) - Do Not Abbreviate or Combine Names

| 10a.  ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 10b.  INDIVIDUAL'S SURNAME<br>DESIR | FIRST PERSONAL NAME<br>CARLYNE | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 10c.  MAILING ADDRESS Line One<br>12935 WILLOW GROVE DR. | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY<br>RIVERVIEW | STATE<br>FL | POSTAL CODE<br>33579 | COUNTRY<br>USA |

**11. ADDITIONAL SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** - INSERT ONLY  ONE SECURED PARTY NAME  (11a OR 11b)

| 11a.  ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 11b.  INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 11c.  MAILING ADDRESS Line One | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**12. ADDITIONAL SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** - INSERT ONLY  ONE SECURED PARTY NAME  (12a OR 12b)

| 12a.  ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 12b.  INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 12c.  MAILING ADDRESS Line One | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**13. ADDITIONAL SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** - INSERT ONLY  ONE SECURED PARTY NAME  (13a OR 13b)

| 13a.  ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 13b.  INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 13c.  MAILING ADDRESS Line One | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**14. ADDITIONAL SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P)** - INSERT ONLY  ONE SECURED PARTY NAME  (14a OR 14b)

| 14a.  ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 14b.  INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 14c.  MAILING ADDRESS Line One | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

STANDARD FORM - FORM UCC-1 ADDITIONAL PARTY (REV.05/2013)      Filing Office Copy      Approved by the Secretary of State, State of Florida

## STATE OF FLORIDA UNIFORM COMMERCIAL CODE
## FINANCING STATEMENT FORM – ADDITIONAL INFORMATION

**15. NAME OF FIRST DEBTOR (1a OR 1b) ON RELATED FINANCING STATEMENT**

| 15a ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| CNI EXPRESS LLC | | | | |

| 15b. INDIVIDUAL'S SURNAME | FIRST   PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX | |
|---|---|---|---|---|

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**16. ADDITIONAL COLLATERAL DESCRIPTION:**

VALUE OF THE ESTATE AND ASSOCIATED ASSETS IS DECLARED TO BE $100,000,000,000.00. THIS SECURITY INTEREST SECURES ALL OBLIGATIONS OF THE DEBTORS TO THE SECURED PARTY, NOW EXISTING OR HEREAFTER ARISING.  RE: CNI EXPRESS LLC, FLINT EDWARDS AND CARLYNE DESIR LOAN AGREEMENTS, SECURITY INSTRUMENTS, PROMISSORY NOTES. BMO BANK N.A. F/K/A BMO HARRIS BANK N.A ACCOUNT # 9695694001AND ACCOUNT # 9327843001, CD LEGACY TRUST REVOCABLE LIVING TRUST ASSETS 2019 VOLVO VNL-SERIES: 860: VNL64T860 6X4 TRACTOR, VIN: 4V4NC9EJ6KN203312, STATE OF OHIO NO # 4805534478, %143736692. 2020 VANGUARD 53' REEFER TRAILER VIN # 527SR5326LL018006, TOGETHER WITH A 2020 THERMO KING C600, MAKE CIMC, MODEL TL, BODY RF, VIN # 6001325579, TITLE # 16125938.  PLEASE BE ADVISED THAT ON OR ABOUT JANUARY 15, 2024, CNI EXPRESS LLC, FLINT EDWARDS AKA FLINT B EDWARDS, AND CARLYNE DESIR (COLLECTIVELY "DEBTORS") OWES CD LEGACY TRUST REVOCABLE LIVING TRUST THE SUM OF $100,000,000,000.00, (ONE HUNDRED BILLION DOLLARS) (CARLYNE DESIR "TRUSTEE"). THIS NOTICE IS LETTING YOU KNOW THERE IS A LIEN ON CNI EXPRESS LLC, FLINT EDWARDS AKA FLINT B EDWARDS AND CARLYNE DESIR ASSETS WHICH INCLUDES THE FOLLOWING 2019 VOLVO VNL-SERIES: 860: VNL64T860 6X4 TRACTOR, VIN: 4V4NC9EJ6KN203312, STATE OF OHIO NO # 4805534478, %143736692. ACCOUNT # 9695694001 AND ACCOUNT # 9327843001, 2020 VANGUARD 53' REEFER TRAILER VIN # 527SR5326LL018006, TOGETHER WITH A 2020 THERMO KING C600, MAKE CIMC, MODEL TL, BODY RF, VIN # 6001325579, TITLE # 16125938 TRANSFER TO THE TRUST.

## NOTICE OF UNPAID LIEN AND TRUST AGREEMENT

**RE:** CNI EXPRESS LLC, FLINT EDWARDS and CARLYNE DESIR Loan Agreements, security instruments, promissory notes. **BMO BANK N.A. f/k/a BMO HARRIS BANK N.A** account # 9695694001and Account # 9327843001, CD Legacy Trust Revocable Living Trust Assets **2019 Volvo VNL-Series: 860: VNL64T860 6x4** Tractor, VIN: **4V4NC9EJ6KN203312**, State of Ohio No # 4805534478, %143736692. 2020 Vanguard 53' Reefer Trailer VIN # 527SR5326LL018006, together with a 2020 Thermo King C600, Make CIMC, MODEL TL, BODY RF, **VIN # 6001325579**, Title # 16125938.

Please be advised that on or about January 15, 2024, CNI EXPRESS LLC, FLINT EDWARDS aka FLINT B EDWARDS, and CARLYNE DESIR (collectively "**Debtors**") owes CD Legacy Trust Revocable Living Trust the sum of **$100,000,000,000.00**. (ONE HUNDRED BILLION DOLLARS) (Carlyne Desir "**Trustee**"). This Notice is letting you know there is a **lien** on CNI EXPRESS LLC, FLINT EDWARDS aka FLINT B EDWARDS and CARLYNE DESIR Assets which includes the following **2019 Volvo VNL-Series: 860: VNL64T860 6x4** Tractor, VIN: **4V4NC9EJ6KN203312**, State of Ohio No # 4805534478, %143736692. Account # 9695694001 and Account # 9327843001, 2020 Vanguard 53' Reefer Trailer VIN # 527SR5326LL018006, together with a 2020 Thermo King C600, Make CIMC, MODEL TL, BODY RF, **VIN # 6001325579**, Title # 16125938 transfer to the trust.

CNI EXPRESS LLC, FLINT EDWARDS and CARLYNE DESIR **cannot access** the assets in the trust until the loan is paid in full or agree settlement. If **BMO BANK N.A. f/k/a BMO HARRIS BANK N.A** attempt to seize the assets in the trust, they are **prohibited** from doing so until CNI EXPRESS LLC, FLINT EDWARDS and CARLYNE DESIR debts are fully paid. Which means even if CNI EXPRESS LLC, FLINT EDWARDS and CARLYNE DESIR were to default on any loans or accounts, creditors cannot claim the assets in the trust.

If **BMO BANK N.A. f/k/a BMO HARRIS BANK N.A** choose to pay off the Amount to receive the collateral in the amount of **$100,000,000,000.00 (ONE HUNDRED BILLION DOLLARS)**. Please make Check payable to CD Legacy Trust Revocable Living Trust mailed to Address 12935 Willow Grove Dr Riverview FL 33579.

Please consider **BMO BANK N.A. f/k/a BMO HARRIS BANK N.A** contract paid in full and immediately release any and all encumbrances on account # 9695694001 and Account # 9327843001, Assets **2019 Volvo VNL-Series: 860: VNL64T860 6x4** Tractor, VIN: **4V4NC9EJ6KN203312**, State of Ohio No # 4805534478, %143736692, 2020 Vanguard 53' Reefer Trailer VIN # 527SR5326LL018006, together with a 2020 Thermo King C600, Make CIMC, MODEL TL, BODY RF, **VIN # 6001325579**, Title # 16125938 to CD Legacy Trust Revocable Living Trust and deliver to CD Legacy Trust Revocable Living Trust the titles post haste. Desired settlement and resolution are loan Satisfaction, release of Liens and dismissal of pass, current and future court actions and debt collections no later than March 14, 2025. **BMO BANK N.A. f/k/a BMO HARRIS BANK N.A** security interest revoke, **TERMINATED.**

If **BMO BANK N.A. f/k/a BMO HARRIS BANK N.A** Violate this notice by taking the Listed Assets after being notified with this notice, **BMO BANK N.A. f/k/a BMO HARRIS BANK**

**N.A** now opt in to paying CD Legacy Trust Revocable Living Trust a Check for **$100,000,000,000.00 (ONE HUNDRED BILLION DOLLARS).**

This notice will also constitute **BMO BANK N.A. f/k/a BMO HARRIS BANK N.A** agreement to the following. Removing any /ALL Business negative remarks made to all credit reference agency will be deleted by March 30, 2025.

**All prior Powers of Attorney, all other prior presumed or granted Executorships, Trust and Agency relationships are REJECTED, REVOKE AND TERMINATED January 15, 2024.**

**Any refutation of the aforementioned and/or the following issues must be done so, on and for the public record, in writing, by way of a sworn Affidavit, signed in their full name under penalties of the Law, including but not limited to perjury.**

**IN WITNESS WHEREOF**, the parties have executed this NOTICE OF UNPAID LIEN AND TRUST AGREEMENT as of the date first above written.

**CD Legacy Trust Revocable Living Trust**
Signature: _____
Name: _____Carlyne Desir_____
Title: _____Trustee_____

FLINT EDWARDS aka FLINT B EDWARDS (**Debtor**)

By: Flint Edwards 12935 Willow Grove Dr
All Rights Reserved, without Recourse
Without Prejudice, U.C.C. 1-207, 1-308, 1-103

CARLYNE DESIR (**Debtor**)

By: _____
By: Carlyne Desir 12935 Willow Grove Dr
Carlyne Desir All Rights Reserved,
Without Prejudice, U.C.C. 1-207, 1-308, 1-103

CNI EXPRESS LLC (**Debtor**)

By: _____
CNI EXPRESS LLC 12935 Willow Grove Dr
CNI EXPRESS LLC All Rights Reserved,
Without Prejudice, U.C.C. 1-207, 1-308, 1-103
Authorized representative

2

The use of a notary below is for identification only and not for entrance into any foreign
jurisdiction

## ACKNNOWLEDGMENT

Hillsborough County                )

                                   )   ss        JURAT

Florida Republic                   )

On this 28th day of February_____, 2025, before me, the undersigned, a Notary
Public in and for Hillsborough County, personally appeared the above-signed, known to me to be
the one whose name is signed on this instrument, and has acknowledged to me that he/she has
executed the same.

Signed: _____

Notary name: Terry Ann Taylor-Beckford

My commission expires: 4|11|2026_____ (NOTARY SEAL)



**TERRY-ANN TAYLOR-BECKFORD**
Notary Public
State of Florida
Comm# HH251826
Expires 4/11/2026